[Civil No. 1185.   Filed March 27, 1911.]

[114 Pac. 553.]

HENRY KROEGER, Plaintiff and Appellant, v. THE TWIN BUTTES RAILROAD COMPANY, a Corporation, Defendant and Appellee.

1. COURTS—UNITED STATES SUPREME COURT—DECISIONS—EFFECT.— The decisions of the federal supreme court are controlling in the territory of New Mexico.

2. WATERS AND WATERCOURSES—OBSTRUCTION—COMMON-LAW RULE.—At common law a natural stream or watercourse cannot be obstructed by a lower proprietor to the detriment of those above him.

3. COMMON LAW—APPLICABILITY.—Under the express terms of the statute adopting it, the common law can be modified or disregarded when not adapted to local physical conditions, the necessities, habits, or customs of the people.

4. WATERS AND WATERCOURSES—OBSTRUCTION—COMMON LAW—APPLICABILITY—"RUNNING STREAMS."—The common-law rule against obstructing running streams to the injury of adjacent lands applies in Arizona to well-defined arroyos or natural channels through which surface or flood waters flow.

5. RAILROADS—"WATERCOURSES"—OBSTRUCTION.—Civil Code of 1901, paragraph 859, subdivision 5, requiring railroad companies to restore streams, watercourses, etc., crossed by them, requires restoration of any well-defined channel or arroyo, in which surface or flood waters flow.

APPEAL from a judgment of the District Court of the First Judicial District, in and for Pima County.   John H. Campbell, Judge.   Reversed.

## STATEMENT BY THE COURT.

Appellant is the owner of certain lots in the city of Tucson, upon which are a residence and outbuilding constructed of adobe. After appellant's ownership had continued for some fifteen or twenty years, the appellee constructed its roadbed on the west side of appellant's property, and at a distance of about seventy-five feet from his buildings. The embankment of the railroad company's track was about four feet higher than the surface of his land for about half a mile south of his property, about three feet higher than its surface for about sixty rods north of his property and about one hundred and fifty feet north of his house. The appellee had under its road embankment one culvert which was fifteen feet long and twenty-one inches deep, and at about six hundred feet south of his house the appellee had another culvert thirty feet in length and twenty-one inches deep. On the 19th day of July, 1909, appellee's property was flooded and his buildings seriously damaged thereby. On former occasions the water, in times of rain, was backed up onto his land until carried off by culverts of appellee. Water, which in time of rain fell upon a considerable area, flowed across appellant's premises, and, but for appellee's embankment, would have been carried through two wet weather arroyos and discharged into the streets and gutters of the city. At the close of the case, the trial court instructed the jury to return a verdict in favor of the defendant company, and, from the judgment rendered in pursuance of such verdict, this appeal is prosecuted.

Worsley & Feier, for Appellant.

Frank H. Hereford and Frank E. Curley, for Appellee.

DOE, J.—There was a substantial conflict in the evidence upon the question of the sufficiency of appellee's culverts to carry such waters as might reasonably and naturally be expected to accumulate in times of heavy rain. The action of the trial court could only have been induced by the belief that the decision of the supreme court of the United States in *Walker* v. *N. M. & S. P. R. Co.,* 165 U. S. 593, 17 Sup. Ct.

421, 41 L. Ed. 837, was applicable, and therefore controlling in this case. That case was appealed from the supreme court of New Mexico upon a state of facts substantially similar to those involved in this case, with the exception that in this case the plaintiff had been in possession for fifteen or twenty years prior to the construction of the railroad, while, in the other, the road had been constructed for some ten years before plaintiff acquired title. This difference, however, does not appear material in view of the grounds on which the decision in that case is based. There appears to be a substantial conflict of opinion among the state courts as to what is the common-law doctrine with respect to the flow and obstruction of surface water; but in *Walker* v. *N. M. & S. P. R. Co.,* *supra,* the supreme court of the United States says: "Does a lower land owner, by erecting embankments or otherwise preventing the flow of surface water onto his premises, render himself liable to an upper land owner for damages caused by the stopping of such flow? In this respect the civil and common law are different, and the rules of the two laws have been recognized in different states of the Union; some accepting the doctrine of the civil law that the lower premises are subservient to the higher, and that the latter have a qualified easement in respect to the former, an easement which gives the right to discharge all surface water upon them. The doctrine of the common law, on the other hand, is the reverse, that the lower land owner owes no duty to the upper land owner, that each may appropriate all the surface water that falls upon his own premises, and that the one is under no obligation to receive from the other the flow of any surface water, but may in the ordinary prosecution of his business and in the improvement of his premises by embankments or otherwise prevent any portion of the surface water coming from such upper premises." And, as the decisions of that court are of controlling force in this jurisdiction, it becomes necessary for us to consider to what extent, if any, the decision in question is applicable under existing conditions in this territory. In that case the court expressly recognizes the power of territorial legislatures to legislate upon all subjects save in so far "as limited by the constitution of the United States and the organic act and the laws of Congress appertaining thereto." It having been enacted

by the legislature of New Mexico that "in all courts in this
territory the common law as recognized in the United States
of America shall be the rule of practice and decision," the
court held the common-law doctrine concerning the obstruc-
tion of surface water applicable in New Mexico, and affirmed
the right of the railroad company to obstruct by its embank-
ment, the flow of surface water and to back it up upon the
higher adjacent land over which it had flowed to the damage
of such adjacent property. The court apparently indicates
that the rule would have been otherwise had the water been
that of a natural running stream, and it is a well-settled rule
of the common law that the water of a natural stream or
watercourse may not be so obstructed by a lower proprietor
as to flow back to the detriment of those above him. Goddard
on Easements (Bennett's ed.), 57; 2 Farnham on Waters and
Water Rights, sec. 461 et seq.; Black's Pomeroy on Water
Rights, c. 2, sec. 8; Gould on Waters, sec. 204.

In this territory the common law has been adopted in a
greatly restricted form, our statute upon the subject being
as follows: "The common law, so far only as it is consistent
with and adapted to the natural and physical condition of
this territory, and the necessities of the people thereof, and
not repugnant to, or inconsistent with, the constitution of
the United States, or Bill of Rights, or laws of this territory,
or established customs of the people of this territory, is hereby
adopted and shall be the rule of decision in all courts of this
territory." In those jurisdictions where the common law
has been recognized in its entirety as the rule of decision,
owing to its flexibility, it is commonly modified in its applica-
tion so far as may be necessary to meet changed physical and
social conditions.

In *People* v. *Appraisers,* 33 N. Y. 461, it is said: "No doc-
trine is better settled than that such portions of the law of
England as are not adapted to our condition form no part
of the law of this state. This exception includes, not only
such laws as are inconsistent with the spirit of our institu-
tions, but such as were framed with special reference to the
physical condition of a country differing widely from our
own. It is contrary to the spirit of the common law itself
to apply a rule founded on a particular reason to a case where
that reason utterly fails." Under our statute the courts are

expressly authorized to either modify or disregard it, when not adapted to local physical conditions, the necessities, habits, or customs of our people.

At no time in the history of this territory has recognition been given to the common-law doctrine of riparian rights, and the right of appropriation of all water, including flood waters, to any useful purpose is expressly authorized and vested by our laws in the first appropriator to the extent of his appropriation and use. The scarcity of running streams and gentle rains favorable to agricultural purposes and the comparative frequency of very heavy rains or "cloudbursts," as they are locally termed, which cause raging torrents to suddenly form and rush for great distances through eroded channels called "arroyos," without encountering any running stream or permanent body of water, render imperative such degree of care as will insure the maximum of benefit in the utilization of the former and the minimum of injury from the latter class of waters. Arroyos formed by the erosion of flood waters are usually permanent in character and of constantly increasing capacity. They have well-defined channels. Many of them have great capacity, and at times carry immense bodies of water. The reasons for the common-law rule against the obstruction of running streams apply equally in this territory to the obstruction of arroyos through which surface and flood waters are accustomed to flow.

Referring to local conditions in Minnesota, the supreme court of that state says: "We do not deem it necessary to determine whether this was a 'natural watercourse,' or mere 'surface' water, under the legal definitions of these terms. If it be surface water, the general common-law doctrine that neither the retention nor repulsion of surface water is an actionable injury must necessarily be materially modified in such cases. In a broken and bluffy region of country, like that part of southeastern Minnesota adjacent to the Mississippi river and its tributaries, intersected by long, deep coolies or ravines, surrounded by high, steep hills or bluffs, down which large quantities of water from rain or melting snow rush with the rapidity of a torrent, often attaining the volume of a small river and usually following a well-defined channel, it would be manifestly inappropriate and unjust to apply the rules of common law applicable to ordinary surface water. In many

respects such streams partake more of the nature of natural streams than of ordinary surface water, and must, at least to a certain extent, be governed by the same rules.'' *McClure* v. *City of Red Wing*, 28 Minn. 186, 9 N. W. 767.

Among the enumerated powers granted to railroads by title 13, chapter 7 of the Revised Statutes of Arizona of 1901 is the following: ''To construct said railroads and telegraphs across, along or upon any stream of water, watercourse, street, avenue or highway, or cross any railway, canal, ditch or flume which said railroads and telegraphs, or either thereof, shall intersect, cross or run along; but said corporation shall restore such streams, watercourses, streets, avenues, highways, railways, canals, ditches and flumes so intersected, to their former state as near as may be, so as not unnecessarily to impair their use or injure their franchise.'' Civ. Code 1901, par. 859, subd. 5.

Independently of any statutory provision, we think the rule of the common law relative to the obstruction of running streams to the injury to adjacent lands is applicable in this territory to the obstruction of any well-defined arroyo or natural channel through which surface or flood waters, at times, flow. Nor does the foregoing provision materially restrict the measure of duty otherwise imposed by law upon the appellee. While the term ''watercourse,'' used in the statute probably as defined and used in England and the eastern states, would not cover wet weather arroyos, yet, in view of local conditions which must have been within the knowledge and contemplation of the legislature, and, in view of its use of that expression in connection with the words ''stream of water,'' we think the legislature intended, by the use of that expression, to include any well-defined channel or arroyo in which surface or flood waters flow in times of heavy rain.

For these reasons we think the case of *Walker* v. *N. M. & S. P. R. Co., supra,* inapplicable in this territory, and that the duty was incumbent upon the appellee to have constructed its roadbed, in so far as practicable, in such manner as, without unnecessarily impairing the use of its roadbed or injuring its franchise, would have left the arroyos which it obstructed in their former unobstructed condition.

The failure to submit the case to the jury under proper instructions inclusive of the measure of damages constitutes reversible error, for which the judgment of the district court is reversed, and the case remanded for new trial.

KENT, C. J., and LEWIS, J., concur.   DOAN, J., concurs in the result.

NOTE.—Liability for damming back water of stream, see note in 59 L. R. A. 817.