[Civil No. 1185.   Filed October 24, 1912.]

[127 Pac. 735.]

HENRY KROEGER, Appellant, v. THE TWIN BUTTES
RAILROAD COMPANY, a Corporation, Appellee.

1. APPEAL AND ERROR—REHEARING—SCOPE.—A case found pending
under an order for a rehearing, made by the supreme court before
the territory became a state, not clearly showing on which of the
grounds urged it was based, will be considered as if the rehearing
was granted generally on its merits as though it had never been
considered further than to settle a question of practice not going
to the merits.

2. TRIAL—DIRECTING VERDICT.—Directing verdict for defendant was
error, if, on any theory of the case made by the evidence under the
pleadings, plaintiff would have been entitled to a verdict.

3. TRIAL—DIRECTING VERDICT—QUESTION RAISED.—Motion to direct a
verdict does not question the sufficiency of the pleadings, but raises

merely the question of the legal sufficiency of the evidence to sustain a verdict against the moving party.

4. WATERS AND WATERCOURSES—SURFACE WATER—DIVERSION.—Where surface water from surrounding country passed in its natural course, not over, but by, plaintiff's land on either side, and when beyond it was intercepted by the embankment of defendant's railroad, it not having constructed enough or sufficient culverts to let pass through it the waters reasonably to be expected, and it there accumulated till it was cast back on plaintiff's higher land, defendant was liable.

APPEAL from a judgment of the District Court of the First Judicial District, in and for the County of Pima. John H. Campbell, Judge. Reversed and remanded.

On rehearing. For former opinion, see *Kroeger* v. *Twin Buttes R. R. Co.*, 13 Ariz. 348, 114 Pac. 553.

### STATEMENT OF FACTS BY THE COURT.

To the south and east of the city of Tucson the surface of the country is nearly level, extending to the mountains beyond from twelve to twenty miles. The general slope of this mesa is from the east and southward to the north and westward. The slope is about uniform and the grade light. Plaintiff's dwelling-house and outhouses are situated upon premises comprised of six lots located on the east side of the city of Tucson and on the mesa mentioned above. To the east of plaintiff's premises is an elevation or ridge about seventy feet higher than plaintiff's land, and about one-half mile from and directly south of the plaintiff's land is another elevation having a low area between the two high elevations with a north and westward slope or water fall. The surface water from this area and many miles distant from the south, east, and southeast flows in a north and westward direction. The surface water, in seeking a lower level, cut into the surface at least two arroyos; one about one hundred and fifty feet north of plaintiff's lands, and another about six hundred feet south of these premises. The water, after passing through these arroyos, passed on and into the streets and gutters of the city of Tucson. The plaintiff has occupied the premises as his residence for fifteen or twenty years prior to the year 1904, and no surface water accumulated on his premises sufficient to injure his buildings or property.

In 1904, defendant constructed its railroad from a point north of plaintiff's premises to several miles south, and this railroad is located about seventy-five feet west of plaintiff's dwelling-house. The embankment for about sixty rods north of plaintiff's premises is three feet higher than the surface at plaintiff's house, and the embankment is about four feet higher than the surface for about one-half a mile to the south of his property. Defendant constructed a culvert fifteen feet long and twenty-one inches deep under its track at the arroyo, which is mentioned as being one hundred and fifty feet north of the dwelling-house; and over the arroyo, six hundred feet south of the dwelling-house, defendant constructed a culvert thirty feet long and twenty-one inches deep under its track. Along the east side of the track was a ditch.

From the time the railroad was constructed to the 19th of July, 1909, the railroad embankment, at times of rains, caused some surface water to accumulate along the track in the vicinity of plaintiff's property, but not of sufficient amount to do any great damage, if any, to his premises. On the 19th of July, 1909, a heavy rain fell over the mesa described. The water from the rain accumulated along the east side of the roadbed at and near the culverts mentioned, and particularly at the culvert to the south of plaintiff's premises, and, following the ditch northward in great quantities, filled the reservoir above and to the east of the track caused by the embankment until the water ran over the track and covered plaintiff's premises. Having no outlet, the water stood over plaintiff's premises for several hours, causing the walls of his buildings to soften and fall, and causing the damage complained of. The items of damage claimed were shown.

On motion, the court instructed the jury to return a verdict for the defendant, which was recorded, and, after denying a motion for a new trial, the court rendered judgment for the defendant. From which judgment and order plaintiff has appealed, and claims that the instructions to the jury to return a verdict is error, and that the verdict is contrary to the law and the evidence.

Messrs. Worsley & Feier, for Appellants.

Mr. Frank H. Hereford and Mr. Frank E. Curley, for Appellee.

CUNNINGHAM, J.—On March 11, 1911, the supreme court of the territory of Arizona handed down its opinion in this case, reversing and remanding same. *Kroeger* v. *Twin Buttes R. R. Co.*, 13 Ariz. 348, 114 Pac. 553. Subsequently, and before the advent of statehood on February 14, 1912, that court granted appellee's motion for a rehearing. It is not clear upon which of the several grounds urged the order was based, but we find the case pending for our consideration, and, under such conditions, we will consider the same as though the rehearing was granted generally upon its merits as though it had never been considered and decided (3 Cyc. 219, par. 6) further than to settle the question of practice not going to the merits of the controversy.

If, upon any theory of the case made by the evidence under the pleadings, the plaintiff would have been entitled to a verdict, it was an error for the trial court to direct the verdict. This is so elementary that we do not deem it necessary to cite authorities.

An examination of the complaint discloses that plaintiff claims damages resulted to him because the defendant's track prevented the surface water from taking its natural course, and diverting it and causing it to be "dammed back upon plaintiff's lands," etc., and because the "defendant company did not use due and reasonable care to drain and keep drained by good and sufficient culvert or culverts at the time it constructed its said railroad track," etc., "and has not provided good and sufficient culverts to carry away the water from the land of the plaintiff, but has caused the water to be dammed back upon the land," etc., and because the defendant, having knowledge of the conformation of the country, "wrongfully, unlawfully, willfully, intending to injure and annoy plaintiff, caused divers large quantities of water to be diverted from its natural course and dammed back and forced upon the lands, etc., of the plaintiff, and that the defendant . . . did not build a sufficient culvert under its roadbed to carry away the surface flow of water, thereby causing the water to accumulate and force it back upon the lands . . . of plaintiff," and alleging, by reason of the negligence, in not providing good and sufficient culverts under its road, caused the damage, and the company knew "that it would divert the water from its natural course and dam it back upon the land . . . and cause

plaintiff great and irreparable damage.'' And finally the plaintiff alleges ''that, by reason of the wrongful, unlawful, willful, and intentional injury and negligence on the part of the defendant company in not building sufficient culvert or culverts under its roadbed and track to carry away the water and prevent the surface flow from accumulating and taking its natural course, . . . plaintiff has suffered the damage complained of.'' The only fair construction that can be placed upon the complaint, is, in brief, charging the improper construction of the railroad in not supplying sufficient waterways to carry off the surface water that would reasonably be expected to fall in the area of country lying east and south of the level area across which the embankment extends, and finding its way by its usual course was obstructed by the embankment on the right of way, and the water cast in large quantities back upon plaintiff's premises. The culverts were not sufficiently large or not a sufficient number of culverts under the track to carry the water, acting to *divert* the water from the course usually followed, and the embankment of the track acted to discharge the water on to plaintiff's premises, causing the damage. The defendant in its answer and evidence seemed to place the same construction on the pleading of plaintiff. It denies generally, and specially alleges that the cause of the damage was from ''a sudden, violent, extraordinary, and unforeseen storm of rain and wind, such as could not have been anticipated,'' and that the damage to the plaintiff's premises ''was proximately caused by said . . . storm . . . without any fault or negligence on the part of the defendant, and that the injury to the plaintiff's property . . . was the result of an inevitable accident'' for which defendant is not liable.

A motion to direct a verdict does not question the sufficiency of the pleadings, but raises merely the question of the legal sufficiency of the evidence to sustain a verdict against the moving party. 38 Cyc. 1565. Where but one reasonable conclusion can be drawn from the proof adduced, and where there is no disputed evidence on material points, a verdict should be directed. Doubts should in all cases be resolved in favor of the submission of the case to the jury. It is only where a court can find no evidence which in its deliberate and ultimate judgment is entitled to be weighed that the jury should be instructed in terms that there is no evidence to support the

burden of proof which rests upon the party. A verdict should not be directed except in cases where the evidence is so conclusive that reasonable minds could not differ as to the result to be reached; neither should a verdict be directed when a substantial conflict in the evidence is present. 38 Cyc. 1567, 1568.

The evidence is without conflict that the railroad track, including the embankment, served to cast the waters on to the premises of plaintiff from which the damage to plaintiff's property resulted. Plaintiff produced testimony tending to establish the facts that the water accumulated on defendant's right of way in great quantities at the culvert located about six hundred feet south of plaintiff's lands, and from thence flowed northward along a ditch along the embankment and accumulated east of the embankment, rising until the water overflowed the track westward and northward of plaintiff's dwelling-house. Also some testimony was produced by the plaintiff tending to establish the fact that the water was impeded at the culverts over the arroyos because they were not sufficient in capacity to carry the water reaching there from above, and that the company had not constructed a sufficient number of culverts to carry through and beyond its embankment the surface water reasonably expected to descend from the area draining that way. Defendant does not offer conflicting testimony on any feature of the above conditions except as to the sufficiency of the culverts and the quantity of surface water reasonably expected to reach the track. Upon the last question there developed a sharp conflict in the testimony, and this seems to have been the point most bitterly contested at the trial.

It was not insisted at the trial that the surface waters were repelled from defendant's lands by a wall or embankment at the border of its property and caused to flow onto the adjacent lands, but it is unquestioned that the roadbed embankment held the water back. It is a reasonable inference from all the testimony that this roadbed was necessary in all particulars to the proper enjoyment of defendant's franchise and property, and was not constructed for the purpose of preventing the flow of the surface water upon its right of way. It is a fair and legitimate inference that the jury would have been justified in drawing from the evidence that the surface water

from the great area of country lying east and southeast of the defendant's track and south of plaintiff's lands naturally reached defendant's roadbed through the arroyos to the north and to the south of plaintiff's lands, and accumulated there in large quantities by reason of the artificial embankment of the roadbed, and that defendant anticipated such accumulation of such waters, and provided a ditch along the east side of the embankment, which ditch actually did on this date carry the accumulated surface water along the track in a northerly direction to near the plaintiff's lands, and there discharged the waters so that it formed a pool about the plaintiff's premises causing the damage. That the defendant could reasonably expect such damage would result from the manner in which it constructed its roadbed, and could, by using reasonable care in such construction, have avoided such damage by building larger culverts at the arroyos, or by building a greater number of culverts under the embankment at places communicating with the ditch on the east side of the track embankment, thus supporting the plaintiff's contention, or a very fair inference may have been drawn by the jury from the same state of facts that the rainstorm on that date was an unusual fall of rain, such as amounts to an inevitable accident, and the water flowed in such unusual quantities that defendant could not have reasonably anticipated and guarded against, and that the outlets under the defendant's roadbed were sufficient to carry all surface waters reasonably expected to reach the road embankment at any time, and therefore the damage resulted to plaintiff's property without the fault of the defendant, thus supporting the defendant's contention.

It is in effect agreed by the counsel that the trial court took the view that this cause was controlled by *Walker* v. *New Mex. & S. P. R. Co.*, 165 U. S. 593, 41 L. Ed. 837, 17 Sup. Ct. Rep. 421. In that case it was alleged in the declaration "that the defendant obstructed the natural and artificial watercourses by which the water from the north and west of plaintiff's property, and from the Socorro and Magdalena Mountains, in their natural flow and fall, passed over the lands of the plaintiff and other lands and emptied into the Rio Grande." The court propounds this question: "Does a lower land owner by erecting embankments or otherwise preventing the flow of surface water onto his premises render himself

liable to the upper land owner for damages caused by the stopping of such flow?'' It will be observed that this question is formulated upon the facts that the surface water obstructed in its natural flow and fall ''passed over the lands of the plaintiff.'' The court must have held that fact well in mind, as will appear from the language of the court that immediately followed the question, viz.: ''In this respect the civil and common law are different, and the rules of the two laws have been recognized in different states of the Union—some accepting the doctrine of the civil law, that the lower premises are subservient to the higher, and that the latter have a qualified easement in respect to the former, an easement which gives the right to discharge all surface water upon them. The doctrine of the common law, on the other hand, is the reverse, that the lower owner owes no duty to the upper land owner, that each may appropriate all the surface water that falls upon his own premises, and that the one is under no obligation to receive from the other the flow of any surface water, but may, in the ordinary prosecution of his business and in the improvement of his premises by embankments or otherwise, prevent any portion of the surface water coming from such upper premises.'' The court finds that the common-law rule prevails in New Mexico, and finds that no natural or artificial watercourse was obstructed, which resulted in affirming that judgment.

A very clear distinction exists between the Walker case and the case at bar. In that case the surface water ''in its natural flow and fall passed over plaintiff's lands'' and became obstructed by the embankment, while in this case a fair presumption can be drawn that the surface waters in their natural flow passed over other lands and accumulated on defendant's lands—right of way—and, following the embankment, were cast from defendant's lower lands onto the plaintiff's higher lands. The Walker case was dealing with surface water flowing from plaintiff's lands onto defendant's lands, while in this case a fair inference, drawn from the facts in evidence, would justify a finding that we have to deal with surface water cast back from off defendant's lands onto the plaintiff's. The rule applied in the Walker case would apply in this case if the plaintiff had constructed a sufficient wall along and around his premises so as to repel the water forming along the east side of defendant's railroad track, and by

reason of such wall the waters should have washed out or damaged defendant's railroad track, and the parties reversed. Certainly the plaintiff could not be liable in such supposed case, for he would then be confining the surface water to defendant's premises where it is said to form a part of the freehold so long as it is thereon. *Cairo & V. R. R. Co.* v. *Stevens,* 73 Ind. 278, 38 Am. Rep. 139. The rule works both ways. The railroad company is under no obligations to receive surface waters from plaintiff's lands; neither is plaintiff under obligation to receive surface water from defendant's premises. It is the rule of both the civil and common law, and universally recognized, that a land owner has no right to collect surface water in an artificial channel and discharge it in large quantities upon the lands of an adjoining owner to his damage. 40 Cyc. 647, authorities cited; note, subd. b, 85 Am. St. Rep. 730.

From reason and the authorities cited, this general rule cannot be questioned. We have seen that there is some evidence supporting the theory that the defendant caused the surface water to collect and accumulate east of its road embankment at a point distant from plaintiff's lands, and its roadbed with a ditch directly cast the water upon plaintiff's premises which he was under no legal servitude to receive from the lower premises. Therefore the court erred in directing the verdict for the defendant in this case. It was the duty of the court to submit the cause to the jury under proper instructions and permit the jury to draw such proper inferences as the evidence will warrant.

The judgment is reversed, and the cause remanded to the superior court of Pima county for proper proceedings according to law.

FRANKLIN, C. J., and ROSS, J., concur.

---

NOTE.—As to railroad's liability for nuisance by causing overflow, accumulation, or pollution of water, see note in 32 L. R. A., N. S., 376.

As to liability of railroad for conducting surface water through embankment and on to the property of an adjoining owner, see note in 12 L. R. A., N. S., 680.

As to the right of one land owner to accelerate or diminish the flow of water to or from the premises of another, see note in 85 Am. St. Rep. 707.