## KETELSEN v. STILZ.

[No. 22,942. Filed February 16, 1916. Rehearing denied May 12, 1916.]

1. COMMON LAW.—*Adoption.*—*Statutes.*—Section 236 Burns 1914,
   §236 R. S. 1881, declaring the common law of England and the
   statutes of the British Parliament made in aid thereof prior to the
   reign of James the First to be a part of the law of Indiana, does not
   bind the court to follow an English decision of that period, if such
   decision is unreasonable and unsuitable to American institutions, as
   the theory of the adopted system is that the law consists, not in the
   actual rules enforced by the decisions of the English courts, but in
   the principles from which the rules flow. p. 704.
2. JUDGMENT.—*Joint Tortfeasors.*—*Bar.*—A judgment on which an
   execution has been returned *nulla bona* against one joint tort-
   feasor is not a bar to an action against the other tortfeasors who
   were not parties to such judgment, since in such cases a full satis-
   faction or its equivalent is essential to a good plea of former judg-
   ment. (*Davis* v. *Scott* [1822], 1 Blackf. 169; *Allen* v. *Wheatley*
   [1834], 3 Blackf. *332; *Fleming* v. *McDonald* [1875], 50 Ind. 278;
   and *Ashcraft* v. *Knoblock* [1896], 146 Ind. 169, overruled.) p. 709.

From Superior Court of Marion County (88,419);
*Charles J. Orbison*, Judge.

Action by Anna Ketelsen against Fred D. Stilz and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Reversed.*

*William E. Jeffrey, L. Ert Slack* and *E. E. Mc-Ferren,* for appellant.
*Hanna & Daily* for appellees.

LAIRY, J.—Appellant brought this action to recover damages resulting to her from an exchange of a piece of real estate for real estate owned by one McCleay, which damages were alleged to have been occasioned by the fraud of appellees. It appears from the allegations of the complaint that appellees were real estate agents and that as such they sold to appellant a piece of property assuring her at the time that in case she desired to dispose of it they would assist her without charge. Appellant afterward consulted appellees with reference to the disposition of the property and was informed that they represented McCleay who owned a desirable rental property, and they advised her to exchange her property for that owned by McCleay. Appellant alleges that she made the exchange upon the advice of appellees, the negotiations being conducted by them, and that during these negotiations they made false and fraudulent representations as to the character, condition and value of the McCleay property, which resulted in damage to appellant, and which form the basis of this action. The sufficiency of the complaint is not questioned on appeal. Appellees filed an affirmative answer to the complaint, which was held good as against a demurrer for want of facts. To this answer appellant filed an affirmative reply to which a demurrer was addressed by appellees and sustained by the court. The rulings of the court

in passing upon these demurrers are assigned as error.

Only a single question is presented. From these pleadings, it appears that prior to the commencement of this action appellant sued McCleay, the owner of the real estate for which she exchanged her property, and recovered a judgment based upon fraudulent representations made by him in the same transaction with reference to the exchange of the same property. It further appears that appellant caused an execution to be issued against McCleay on this judgment, which execution was returned *nulla bona.* Under the facts thus shown, appellees take the position that McCleay was a joint tortfeasor with them and that the recovery of a judgment against him for the tort for which all were jointly and severally liable and the issue of an execution thereon, operated to release the other tortfeasors from liability. By its rulings, the trial court sustained the position of appellees. Appellant takes the position that she is entitled to one satisfaction of her demand, that she has a right to sue all, either jointly or separately, and that nothing short of a satisfaction, release or discharge of her claim in favor of one of the joint tortfeasors will operate as a release to the others.

It seems to be well-settled law in England since the case of *Brown* v. *Wooton* (1606), 4 Croke's Rep. 73, Yelv. 67, that a judgment against one tortfeasor may be pleaded in bar of an action for the same cause brought against another as a joint tortfeasor, without averring satisfaction of the judgment. *Buckland* v. *Johnson* (1854), 15 C. B. 145, 80 C. L. Rep. 145; *Brimsmead* v. *Harrison* (1872), 7 L. R. C. P. D. 547, 41 L. J. C. P. N. S. 190.

Appellees assert that the doctrine announced in *Brown* v. *Wooton, supra,* was the common law of England at the time of the settlement of Jamestown,

that our code adopts the common law of England
at that date, as the common law of Indiana and that
the courts of this State are thereby bound to follow
the law as announced in that case. §236 Burns 1914,
§236 R. S. 1881. While it is true that the section of
the statute pointed out makes the common law of
England the common law of Indiana, and that the
case of *Brown* v. *Wooton, supra,* declares the law to
be in accordance with the principle asserted by ap-
pellees, we can not subscribe to the proposition that
we are bound to accept the rule announced by the
decision relied on and the cases cited in support there-
of as being a part of the common law as the term
"common law of England" is used in the statute re-
ferred to. It is appellees' position that by virtue of
the statute all rules of the common law of England in
the year 1607, are, except as otherwise provided,
in full force in this State, and that in determining
what such rules were we must look to the ruling
decisions rendered by the English courts up to that
time. Appellees misinterpret the statute in ques-
tion as to the meaning of the term common law
as therein used, and also as to the application of the
specific period therein designated to parts of the sec-
tion other than that to which it was meant to be ap-
plied. The section reads in part as follows: "The
law governing this State is declared to be ＊ ＊ ＊
*Fourth.* The common law of England, and statutes
of the British Parliament made in aid thereof prior
to the reign of James the First (excepting certain en-
actments) and which are of a general nature, not
local to that kingdom ＊ ＊ ＊ ." As viewed by
this court, it was not the purpose of the legislature by
this section of the statute to adopt the rules of the
common law as announced and applied by the courts
of England prior to 1607, but that the purpose was to

adopt the general principles of the common law which underlie and control all rules of decision throughout all time, as the same were affected by the acts of the British Parliament passed in aid thereof prior to the time mentioned. The statute was declaratory in its nature, Indiana being carved out of that portion of America settled by the English colonists who brought with them the common law at the time the settlement was established, and the statutes of Parliament in aid of the common law were to be distinguished from those passed in derogation of it. Such acts were to be distinguished also from the acts of the British Parliament passed after the physical separation from the mother country, after which time courts were to look particularly to American legislation and to the reports of American courts for improvements and modifications of the rules of the common law.

The common law of England was derived from the universal usage and custom of the early English people, and is a system of jurisprudence founded upon principles of justice as it was conceived and administered by the English courts of law, in contradistinction to the methods of administering justice employed by the courts of equity, and that system of jurisprudence which formed the basis of the Roman or civil law. From this common-law system, and from the usages, customs and maxims upon which it is founded, innumerable rules and principles emanated, as the courts from time to time declared what they understood to be the correct law applicable to the matter before them and such law was determined by a system of reasoning and of administering justice consistent with the universal usages, customs and institutions of the English people. The common law grew to be a system of applying to litigated instances, just, reasonable and con-

Ketelsen *v.* Stilz—184 Ind. 702.

sistent rules of decision, suitable to the genius of the people and to their social, political and economic conditions and the system once established has never changed. The rules so deduced from this system, however, were continually changing and expanding with the progress of society in the application of this system to more diversified circumstances and under more advanced periods. The common law by its own principles adapted itself to varying conditions and modified its own rules so as to serve the ends of justice as prompted by a course of reasoning which was guided by these generally accepted truths. One of its oldest maxims was that where the reason of a rule ceased, the rule also ceased, and it logically followed that when it occurred to the courts that a particular rule had never been founded upon reason, and that no reason existed in support thereof, that rule likewise ceased, and perhaps another sprang up in its place which was based upon reason and justice as then conceived. No rule of the common law could survive the reason on which it was founded. It needed no statute to change it but abrogated itself. *People* v. *Randolph* (1855), 2 Park. Crim. Cas. (N. Y.) 174; *Metropolitan Life Ins. Co.* v. *Clark* (1911), 145 Wis. 181, 129 N. W. 1065, 37 L. R. A. (N. S.) 717; *Beardsley* v. *City of Hartford* (1883), 50 Conn. 542, 47 Am. Rep. 677.

The principles of the English common-law system as its theory assumes and its history proves were not applicable or suited to one country or condition of society only, but on the contrary by reason of their properties of expansibility and flexibility their application to many became practicable. The adoption of the common law in the most general terms by the government of any country did not necessarily require or admit of an unqualified application of all its rules, without regard to local cir-

cumstances and the then present enlightened conception of reason and justice. This system of jurisprudence has been adopted by virtue of statutory enactment by most of the states of the Union, but according to the prevailing decisions, the rules as declared by the English courts at one period or another have been controlling only so far as they were suited to and in harmony with the genius, spirit and objects of American institutions. Whether so-called common-law rules have been followed strictly in the several states has depended upon the extent to which they have seemed reasonable, and for this reason what are considered proper rules of the common-law in one state are not necessarily so considered in another, and likewise rules considered proper dictations of the common-law in the eighteenth century are not now so considered in the twentieth. Since courts have had an existence in America, they have never hesitated to take upon themselves the responsibility of saying what are the proper rules of the common law. While courts may properly refer to well-known repositories of legal learning, to ascertain and arrive at the correct rules applicable, and may look to American as well as English books, neither precedents nor opinions of judges can be said with strict propriety to be the law. Although they are to be regarded as proper exponents of the law as adopted, they are to be received merely as evidence of the law rather than as the law itself. *Rensselaer Glass Co.* v. *Reid* (1825), 5 Cow. (N. Y.) 584; *Robert* v. *West* (1854), 15 Ga. 122.

We can not believe, then, that our legislature intended to petrify the rules of the common law as declared by judicial decisions at any one time or period, and to set them up in such unflexible form as to make them absolute rules of decision throughout all time. The theory of our adopted system is

that the law consists not in the actual rules enforced by the decisions of the courts, but consists only in the principles from which these rules flow. Under the section of the statute relied on where there are no governing enactments of the legislature, the courts of this State are in all matters coming before them, to endeavor to administer justice according to the promptings of reason and common sense, which are the cardinal principles of the common law, and they are not to accept blindly the decisions of the English courts of any particular time or period without inquiring as to the reasons upon which they rest. To do so would be to adopt a practice which would be in direct violation of the theory of that common law which the statute prescribes we are to follow. *Sayward* v. *Carlson* (1890), 1 Wash. 29, 23 Pac. 830. *Kroeger* v. *Twin Buttes·R. Co.* (1911), 13 Ariz. 348, 114 Pac. 553, and notes thereto as reported in Ann. Cas. 1913 E 1229; *Clement* v. *Graham* (1906), 78 Vt. 290, 63 Atl. 146 and notes thereto as reported in Ann. Cas. 1913 E 1208. In view of what has been said this court does not feel called upon to adopt the rule as announced in *Brown* v. *Wooton, supra,* and the later English cases.

Only one state, Virginia, is fully committed to the English rule. The decisions of Rhode Island and Pennsylvania at one time seemed to follow it, but the later decisions of these states on the subject are more in conformity with the American doctrine. The overwhelming weight of authority in this country is to the effect that nothing short of a full satisfaction or its equivalent can make good a plea of former judgment in tort, offered in bar of an action against a joint tortfeasor who was not a party to the first judgment. The cases from the various states are collected in a note to the case of *Blackman* v. *Simpson* (1899), 120

Mich. 377, 79 N. W. 573, as reported in 58 L. R. A. 410. Some cases hold that joint tortfeasors may be sued jointly or severally at the option of the plaintiff; and that, if each be sued separately such suits may be pursued to final judgment; but that having obtained judgment, plaintiff must elect as against whom he will take out an execution; and that when he takes execution against one judgment defendant, he must enter a perpetual stay of execution as to each of the other judgments. This rule seems to have been announced in the early decisions of this State. *Davis* v. *Scott* (1822), 1 Blackf. 169; *Allen* v. *Wheatley* (1834), 3 Blackf. *332; *Fleming* v. *McDonald* (1875), 50 Ind. 278, 19 Am. Rep. 711; *Ashcraft* v. *Knoblock* (1896), 146 Ind. 169, 45 N. E. 69.

The case of *Davis* v. *Scott, supra*, consists of only three lines in which it is stated that a plea of former recovery and execution against a joint tortfeasor is a good plea in bar to an action for assault and battery and false imprisonment. This case seems to have been followed in the other Indiana cases cited above in which the rule is more fully stated. This rule seems to be a kind of a compromise between the English rule and the rule adopted by the weight of authority in this country. It is everywhere recognized that an injury caused by the joint wrong of two or more parties gives rise to but a single cause of action and that, while each of the wrongdoers is severally liable for the whole damage, the plaintiff is entitled to only a single satisfaction. A release to one of several joint tortfeasors or the receipt of satisfaction from one, operates in favor of all, and so if a judgment taken against one is fully satisfied all are released.

The rule adopted by the majority of American courts commends itself to the judgment of this

court. It seems reasonable to hold that the injured party should be entitled to one compensation and no good reason has been suggested to show why an ineffectual attempt to collect a judgment rendered against one of several joint tortfeasors should operate to bar further proceedings against another who is jointly liable. An eminent text writer in discussing this question says: "A few * * * cases * * * decide that the mere issuing of an execution is a conclusive election to consider the defendant as exclusively responsible. But a majority of them (the American cases) discountenances this manifest absurdity. * * * How vain and elusive the law must be which declares the right of an injured party to proceed severally against every person concerned in committing an injury, which sustains him until the liability of every wrong doer is severally determined, and evidenced by a final judgment; and which, after thus 'holding the word of promise to his ear breaks it to his hope,' by forbidding him to attempt the execution of either judgment, upon penalty of releasing all the others." 1 Freeman, Judgments §236.

The court feels constrained to disapprove of the rule announced in the case of *Davis* v. *Scott, supra,* and the other cases which follow it; and to adopt the rule which is followed by a majority of the courts of this country. The latter rule seems to be more consistent with reason and better adapted to meet the ends of justice.

The judgment is reversed with instructions to sustain the demurrer to appellee's second paragraph of answer.

Cox, J., dissents.

NOTE.—Reported in 111 N. E. 423. See, also, under (1) 8 Cyc 369, 371, 377; (2) 23 Cyc 1212.