755 P.2d 1130

Cindy LAW, Tom Law and Carol Law, husband and wife, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and The Honorable Thomas W. O'Toole, Judge, Respondents,

James R. HARDER and Jean M. Harder, his wife, Real Parties in Interest.

No. 1 CA–CIV 9006–SA.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 4, 1986.

Greer & Seletos by Robert L. Greer, Phoenix, for petitioners.

Kleinman, Carroll & Kleinman by Gregory P. Novak, Phoenix, for respondents and real parties in interest.

## OPINION

MEYERSON, Judge.

In this special action we are called upon to reconsider the legal viability of the seat belt defense, last addressed by Arizona courts in *Nash v. Kamrath*, 21 Ariz. App. 530, 521 P.2d 161 (1974). In *Nash*, Division II of this court upheld an order excluding evidence of the plaintiff's failure to use a seat belt. We disagree with the reasoning in *Nash* and conclude that evidence of nonuse of seat belts may be admissible if the failure to use a seat belt is a proximate cause of the plaintiff's injuries.

## I. FACTS

In November, 1985, respondents James and Jean Harder (Harder) were involved in a one-car rollover accident in Tempe, Arizona. Both Mr. and Mrs. Harder were thrown from their vehicle. One month later they brought suit against the driver, petitioner Cindy Law, and her parents, petitioners Tom and Carol Law (collectively referred to herein as Law) alleging that the

accident and resulting injuries were caused by Law's negligence. Harder's suit will be tried under the provisions of the Uniform Contribution Among Tortfeasors Act (Act). A.R.S. §§ 12–2501–2509.

During the course of discovery in the litigation, Law requested information from Harder concerning Harder's use of and experience with seat belts and shoulder restraints. Harder refused to respond to these discovery requests on the ground that such matters were not discoverable because they were not relevant. Law moved to compel discovery concerning this information and in June, 1986, the trial court denied the motion concluding, based on *Nash*, that Harder's "failure to wear seat belts as being a cause of [his] injuries is irrelevant and that [Harder] has no duty to wear seat belts." The trial court further relied upon the recent decision of *Clarkson v. Wright*, 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268 (1985).

Law then filed this petition for special action. Because of the statewide importance of this issue and because of the likelihood that there may be many similar pending cases, we have exercised our jurisdiction to grant review in this special action. *See generally* Kleinschmidt, *The Final Judgment Rule in Arizona*, 47 Law & Contemp.Probs. 103 (1984).

## II. LAW

There has been a plethora of litigation concerning the issue of whether a defendant in a personal injury action may introduce evidence of the plaintiff's failure to use seat belts. *See generally Annot.*, 92 A.L.R.3d 9 (1979); *Annot.*, 80 A.L.R.3d 1033 (1977); *Annot.*, 15 A.L.R.3d 1428 (1967). The law review articles on this subject are simply too numerous to mention. *E. g.*, Hoglund & Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law*, 50 Wash.L.Rev. 1 (1974–75); *Note, The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts*, 56 Notre Dame Law. 272 (1980–81).

It is almost universally agreed that a plaintiff's failure to use a seat belt is not negligence per se and therefore such failure should not be an absolute bar to recovery. *E.g., Spier v. Barker,* 35 N.Y.2d 444, 450, 363 N.Y.S.2d 916, 921, 323 N.E.2d 164, 167–68 (1974). Comparative negligence jurisdictions, however, disagree concerning whether evidence of nonuse of seat belts should be admitted in connection with the damage portion of the plaintiff's suit. *Compare Insurance Co. of North America v. Pasakarnis*, 451 So.2d 447 (Fla.1984) (holding such evidence admissible) *with Taplin v. Clark*, 6 Kan.App.2d 66, 626 P.2d 1198 (1981) (holding such evidence inadmissible).

In *Nash*, Division II of this court held such evidence inadmissible. The court found that admitting evidence of the plaintiff's failure to wear a seat belt would be counter to the traditional notion that one has a right to assume that other persons upon the highway will not be negligent. The court reasoned that if one has the right to assume that others will drive according to the rules of the road then there should be no judicially-imposed duty to wear a seat belt as a preventive measure in the case of an accident.

But the doctrine that one is not required to anticipate the negligence of others is one which arises under the law of contributory negligence. *See Norwood v. Sherwin–Williams Co.*, 303 N.C. 462, 469, 279 S.E.2d 559, 563 (1981). And under Arizona's historic formulation of contributory negligence law, negligence on the part of the plaintiff could completely preclude recovery. Accordingly, we agree with the majority of jurisdictions that a driver's failure to "buckle up" should not constitute a complete bar to recovery. The rationale of *Nash*, however, is founded upon the court's belief that the doctrine of mitigation of damages has no place in these cases. Herein lies our disagreement with the *Nash* court.

In our opinion, the failure to wear seat belts should be viewed as an aspect of the doctrine of avoidable consequences and the broader rule requiring mitigation of

damages. *See generally* W. Prosser & W. Keeton, *The Law of Torts* § 65 at 458–59 (5th ed. 1984) (Prosser). Under the doctrine of avoidable consequences, a person who is " 'injured as a the result of the negligence of another is bound to exercise ordinary care to prevent or reduce the damages consequent to an injury, and cannot recover enhanced damages growing out of his failure to use such care.' " *Sanders v. Beckwith*, 79 Ariz. 67, 71–72, 283 P.2d 235, 238 (1955) (quoting 65A C.J.S. *Negligence* § 135 (1950)). This rule is commonly applied to post-accident conduct. We find no logical reason to refrain from applying the avoidable consequences rule to the pre-accident conduct of failing to use an available seat belt. Although one has no duty to anticipate the negligence of others, we would be engaging in judicial fiction if we perpetuate the myth that the occurrence of an automobile accident is not foreseeable.* Because "the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages *prior* to the accident," *Spier v. Barker*, 35 N.Y.2d at 452, 363 N.Y.S.2d at 922, 323 N.E.2d at 168, we hold that the doctrine of avoidable consequences applies to the pre-accident conduct of failure to use an available seat belt. *Cf. Restatement (Second) of Torts* § 465, comment c (1965) (damages may be apportioned where the antecedent negligence of the plaintiff is a contributory factor to the harm which ensues).

This doctrine was alluded to by the court in *Nash* when it concluded that there was no duty to fasten a seat belt and therefore the failure to do so cannot be held to be a breach of the duty to minimize damages. 21 Ariz.App. at 532–33, 521 P.2d at 163–64. The court rejected any "duty" to wear seat belts based upon its belief that there was evidence that in some cases seat belts increased the frequency of certain injuries.

During the twelve years which have elapsed since the date of the *Nash* decision, new and authoritative evidence has documented the important safety benefits from the use of seat belts.

Safety belts and child safety seats, *when they are used and used properly*, are estimated to be 50–60 percent effective in preventing serious or fatal injuries to persons involved in highway vehicle crashes. Use of the protection devices by all occupants last year could have saved 15,000 to 18,000 lives and avoided more than 200,000 moderate-to-severe injuries.

United States Department of Transportation, National Highway Traffic Safety Administration, National Safety Belt Usage Program, *Progress and Assessment Report on the National Safety Belt Usage Program 2* (Sept. 1983) (emphasis in original). "By restraining the automobile occupant during and immediately after initial impact, [a seat belt] significantly reduces the likelihood of ejection and 'second collision' injuries, while providing the driver with more effective control of the vehicle in accident situations." *Twohig v. Briner*, 168 Cal.App.3d 1102, 1107, 214 Cal.Rptr. 729, 732 (1985). Federal recognition of the value of seat belts is clear and unequivocal. Under the authority of the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1431, the National Highway Traffic Safety Administration required automobile manufacturers to install seat belts in all new cars effective January 1, 1968. 32 Fed.Reg. 2408, 2415 (Feb. 3, 1967).

Although there is a split of authority on this issue, we conclude that the decisions of those courts allowing seat belt evidence are more persuasive. The Wisconsin Supreme Court recognized the seat belt defense in 1967. *Bentzler v. Braun*, 34 Wis.2d 362, 149 N.W.2d 626 (1967). That court discussed the issue thoroughly in its recent decision in *Foley v. City of West Allis*, 113 Wis.2d 475, 335 N.W.2d 824 (1983).

---

* Indeed, it is the foreseeability of automobile accidents, *Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir.1968), which has led courts to impose duties upon automobile manufacturers to design vehicles in anticipation of the "second collision," which occurs when the passenger is thrown against the interior of the vehicle following an accident. *Ford Motor Co. v. Evancho*, 327 So.2d 201, 204 (Fla.1976).

The seat belt defense is this court's recognition that in light of the frequency of automobile accidents and the extensive injuries they cause, the general availability of seat belts, and the public knowledge that riders and drivers should 'buckle up for safety,' those who fail to use available seat belts should be responsible for the incremental harm caused by their failure to wear available seat belts.

*Id.* at 483–84, 335 N.W.2d at 828. In *Foley,* the court reasoned that the plaintiff's failure to use seat belts "did not cause the accident, and the conduct was not so wrong that the party should be completely barred from recovery for those injuries caused by the defendant's culpable conduct." *Id.* at 489, 335 N.W.2d at 831. On the other hand, "the defendant [should] not [be] held liable for incremental injuries the plaintiff could and should have prevented by wearing an available seat belt." *Id.* at 489, 335 N.W.2d at 830–31.

The Florida Supreme Court adopted the seat belt defense in *Insurance Co. of North America v. Pasakarnis,* 451 So.2d 447 (1984). The court found that the "seat belt has been proven to afford the occupant of an automobile a means whereby he or she may minimize his or her personal damages prior to occurrence of the accident." *Id.* at 453. The court held:

In view of the importance of the seat belt as a safety precaution available for a plaintiff's protection, failure to wear it under certain circumstances may be a pertinent factor in deciding whether plaintiff exercised due care for his or her own safety.

*Id.* We concur with the above rulings.

The Illinois Supreme Court recently rejected the seat belt defense. *Clarkson v. Wright.* This case was relied upon by the trial court here. The Illinois Legislature adopted a mandatory seat belt law effective July 1, 1985. The *Clarkson* court reasoned that at the time of the accident there was no duty to wear a seat belt and therefore there was "no authority which imposed on plaintiff the duty to anticipate and guard against defendant's negligence."

108 Ill.2d at 133, 90 Ill.Dec. at 952, 483 N.E.2d at 270.

■ We are not persuaded that the absence of a mandatory seat belt law in Arizona should be determinative. *Contra Thomas v. Henson,* 102 N.M. 326, 695 P.2d 476 (1985). As explained above, the victim of a tort has the duty to exercise due care and to act diligently to protect his or her own interests. Therefore, the absence of a mandatory seat belt law in Arizona is not controlling because our ruling is simply applying common law principles requiring the mitigation of damages. The principle that a plaintiff must undertake reasonable measures to protect his own interest is a paradigm judicial principle of historic origins. *Ellerman Lines, Ltd. v. The President Harding,* 288 F.2d 288, 289–90 (2d Cir.1961); *see generally* D. Dobbs, *Remedies* § 8.9 (1973). Moreover, it is the obligation of the judiciary to tailor and apply the common law as society and technology change. *See Kroeger v. Twin Buttes R.R. Co.,* 13 Ariz. 348, 351–52, 114 P. 553, 554–55 (1911), *aff'd on rehearing,* 14 Ariz. 269, 127 P. 735 (1912).

■ Both parties have discussed this subject in connection with the recently enacted Uniform Contribution Among Tortfeasors Act. It provides, among other things:

The defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury. If the jury applies either defense, the claimant's action is not barred, but the full damages shall be reduced in proportion to the relative degree of the claimant's fault which is a proximate cause of the injury or death, if any....

A.R.S. § 12–2505(A). The statute appears to restrict the jury's ability to reduce the plaintiff's damages only if it chooses to apply the defenses of contributory negligence or assumption of risk. We conclude that for the purposes of the Act, the term "contributory negligence" includes the doctrine of avoidable consequences. "Both contributory negligence and avoidable consequences rest upon the same fundamental

policy of making recovery depend upon the plaintiff's proper care for the protection of his own interests, and both require of him only the standard of the reasonable person under the circumstances." *Prosser* § 65 at 458. We agree with the view that "in reality" the doctrines of contributory negligence and avoidable consequences are the same. *Id.* at 459. Accordingly, for the purposes of A.R.S. § 12–2505(A), the jury may reduce a plaintiff's damages by virtue of the plaintiff's failure to use an available seat belt which is a proximate cause of the plaintiff's injuries.

For the foregoing reasons, the trial court's order denying Law the requested discovery is reversed. At trial, Law will be allowed to introduce evidence pertaining to Harder's failure to use a seat belt so long as Law is able to demonstrate a causal relationship between the nonuse of the seat belt and any injuries Harder may have suffered.

HAIRE, J., concurs.

EUBANK, Presiding Judge, dissenting:

I dissent because in my opinion special action jurisdiction should not be exercised in this situation: a discovery dispute. Rule 3, Arizona Rules of Procedure for Special Actions (Rule) states:

The only questions that may be raised in a special action are:

(a) Whether the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion; or

(b) Whether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority; or

(c) Whether a determination was arbitrary and capricious or an abuse of discretion.

Rule 3(a) is mandamus; Rule 3(b) is certiorari and prohibition; Rule 3(c) goes beyond the traditional writs to review "abuse of discretion" of the trial judge. Law Note, *The Plight of the Sorcerer's Apprentice: Arizona's Special Action Practice*, Ariz.

State L.J. 3, 1983, p. 535. A special action is merely a procedure for obtaining extraordinary relief. It "[s]hall not be available where there is an equally plain, speedy, and adequate remedy by appeal; and nothing in these rules shall be construed as enlarging the scope of relief traditionally granted under the writs of certiorari, mandamus, and prohibition." Rule 1.

The majority does not state its basis for granting special action extraordinary relief but it must be Rule 3(c): That the trial judge somehow abused his discretion in following the law as it was before this opinion.

The fact situation before us is that petitioners moved for an order compelling respondents to respond to discovery requests concerning their experience with and use of seat belts. After the issue was briefed and argued, the trial court denied the motion. It stated:

Although the Court is sympathetic with Defendant's argument that Plaintiff should be compelled to respond to discovery regarding plaintiff's knowledge, experience and use of seat belts in this incident, *Nash v. Kamrath*, 21 Ariz.App. 530 [521 P.2d 161] (1974), has squarely held that evidence regarding Plaintiff's failure to wear seat belts as being a cause of Plaintiff's injuries is irrelevant and that Plaintiff has no duty to wear seat belts. The Court finds that the rationale of *Clarkson v. Wright*, [108 Ill.2d 129, 90 Ill.Dec. 950] 483 N.E.2d 268 (Ill. 1985), which held that evidence of failure to wear seat belts is not admissible on either the question of comparative negligence/liability or damages, is persuasive.

On June 20, 1986, following the denial of discovery, petitioners filed this special action, alleging that the trial judge had abused his discretion; that there was no equally plain, speedy and adequate remedy by appeal; and that the Uniform Contribution Among Tortfeasors Act (A.R.S. § 12–2501, *et seq.*) had changed the seat belt law in Arizona. Whether or not the trial judge abused his discretion in refusing to order discovery in this situation should be left to the appeal process. In my opin-

ion the trial judge did not abuse his discretion in so ruling. Thus, special action extraordinary relief should have been denied pursuant to Rule 3.