507 P.2d 700

Dorothy Louise KINGTON and Leason King-
ton, wife and husband, Appellants,

v.

Raymond E. CAMDEN, a minor, by his father
and best friend Raymond E. Camden,
Sr., et al., Appellees.

No. 2 CA–CIV 1301.

Court of Appeals of Arizona,
Division 2.

March 22, 1973.

**362**

Chandler, Tullar, Udall & Richmond, by William J. Augustine, Tucson, for appellants.

Messing, Hirsh & Franklin, P. C., by William Messing and George J. Feulner, Tucson, for appellees Camden.

Robertson, Molloy, Fickett & Jones, P. C., by Michael J. Meehan, Tucson, for appellees Manchenton.

HOWARD, Judge.

This appeal involves two cases against appellants which were consolidated for trial in the lower court. The litigation stems from an automobile accident which occurred in Tucson, Pima County, Arizona.

The case was tried to a jury and at the close of all the evidence the trial court directed a verdict as to liability in favor of appellees Camden and Manchenton. Thereafter the jury awarded damages in favor of the appellees and against appellants.

A timely motion for new trial, or in the alternative for remittitur was made by appellants and denied by the trial court.

Appellants appeal from the verdicts, from the judgments rendered thereon, and from the order denying their motion for new trial or remittitur.

Appellants have presented three questions for review by this court, but in view of our disposition only two of these questions need be discussed.

Appellants first claim that the court erred by granting appellees' motion for a directed verdict as to liability. Viewing the evidence in a light most favorable to the parties' case against whom the motion is made, the appellants, the facts are as follows. On December 22, 1970, appellant Dorothy Kington was traveling westbound on Ajo Way. At the point where Ajo Way passes under Interstate I-10 the road consists of two eastbound lanes and two westbound lanes divided by a raised asphalt median which is eleven feet in width. As one passes under Interstate I-10 in the westbound lane, the lane merges into two lanes, one eastbound and one westbound. Mrs. Kington was in the left lane.

As Mrs. Kington went under the underpass and started towards the narrowing of

the roadway she was overtaking a dumptruck carrying a tractor which was slowly moving westbound in the right lane. As she got close to the truck, two automobiles, traveling at a high rate of speed, approached in the lane to her right, closed in on the truck and trailer which were in their lane of traffic and then cut in front of her. In order to avoid hitting the second of the fast moving vehicles which moved into her lane, appellant Dorothy Kington hit her brakes and turned to the left. As a result she struck the asphalt median strip, causing her automobile to rotate ninety degrees, and hurdled the median into the eastbound lanes where her vehicle struck the Manchenton vehicle. At the time of the accident appellant Dorothy Kington estimated she was going forty to forty-five miles per hour.

The officer who investigated the accident stated that Mrs. Kington told him that she had lost control of her vehicle and crossed over the median strip. Mr. Johnson, called as a witness by the plaintiffs, testified that he was traveling behind the Kington vehicle. He verified the fact that there was a truck and trailer and that two fast moving vehicles drove past him and went in front of Mrs. Kington. He stated that at the time Mrs. Kington hit the median strip she was not behind the wheel of the automobile. Mrs. Kington denied that she ever slid from behind the wheel of the automobile. Although at the trial the witness Johnson stated that the second fast moving vehicle was about three quarters of the way through the gap created by the dumptruck and trailer and the Kington vehicle when Mrs. Kington applied her brakes, at his deposition he testified that the last fast moving vehicle was twenty to thirty feet in front of Mrs. Kington at that time. At trial the witness Johnson also testified that his version of the accident was all really "guess work".

When the motion for a directed verdict on behalf of the appellees was made the following colloquy took place between the court and the attorney for the appellants:

"THE COURT: Let me ask you a question, Mr. Augustine: my notes that —indicate that Officer Post testified that the defendant told him that she lost control and went over the median strip. And also that Witness Johnson indicated that no one was behind the wheel when the car hit curb.

MR. AUGUSTINE: I challenge the record today as I did yesterday on your notes and the allegations by counsel on that point.

THE COURT: On which one; which point?

MR. AUGUSTINE: The point of Mr. Johnson's testimony, there was no one behind the wheel prior to hitting the median.

THE COURT: And you—if you concede that that's so, the motion should be granted?

MR. AUGUSTINE: No, I do not."

Thereupon the court asked the court reporter to look up his notes and then ruled as follows:

"THE COURT: The Court at this point in connection with the—let the record reflect the Court Reporter has just reread a portion of the testimony of Daniel Johnson which rereading indicated that the witness testified that there was no one behind the wheel when the car—when the defendant's car hit the curbing or the median, and with that in mind and considering all the other arguments, the Court is going to grant the plaintiff's motion for directed verdict on negligence and is going to rule as a matter of law that under the circumstances pertaining to this point, that the issue of negligence need not be submitted to the jury."

Further comments by the court indicates its state of mind at the time it granted the motion for directed verdict:

"Court feels on the testimony of Mr. Johnson and on the testimony of Officer Post as to what defendant told him, that you have—that she lost control on the

overall picture of the relationship of the cars, the reasonableness of what a person should do under those circumstances and conditions as well as the lack of any contributory negligence of any kind on the plaintiffs' part or any possibility thereof.

They were minding their own business in their own lane and under the totalitarianness [sic] of this situation, the Court feels that the issue of negligence should not be submitted to the jury."

The principles to be followed by the trial court in passing upon a motion for directed verdict are clearly set forth in City of Phoenix v. Brown, 88 Ariz. 60, 64, 352 P. 2d 754, 757 (1960) wherein the court states:

"In Durham v. Firestone Tire Etc. Co., 47 Ariz. 280, 55 P.2d 648, this Court announced the rule that the trial judge is authorized to direct a verdict in favor of one party *only* where no evidence has been introduced which would justify a reasonable man in returning a verdict in favor of the other party. And not only is the evidence viewed in a light most favorable to the party's case against whom the motion is made, but the truth of whatever evidence he has introduced, together with all reasonable inferences to be drawn therefrom, are taken as admitted."

In Davis v. Boggs, 22 Ariz. 497, 505, 199 P. 116, 119 (1921), the court stated:

" . . . a verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions."

The most that can be said about the evidence in this case is that it is conflicting. Appellees maintain that the testimony of Mrs. Kington is inconsistent with her prior deposition and is incredible. We have reviewed the record and examined the exhibits and do not agree. Reasonable men

might well conclude that Mrs. Kington acted as a reasonable and prudent person under the circumstances, if the jury were to find the facts to be as stated by Mrs. Kington.

Although we have decided that the issue of appellants' liability should have been submitted to the jury, there still remains another question which will undoubtedly arise during the retrial of this case. The court allowed the following portion of Mrs. Kington's deposition to be admitted into evidence:

"Q. Was your car equipped with a seat belt?

A. Yes sir.

Q. Were you wearing the seat belt?

A. No, sir.

Q. Did you fall in any way before you hit the abutment?

A. No, sir.

Q. You're sitting up straight in your seat behind the wheel when you hit the abutment, right?

A. Yes, sir."

■ Appellants object on the grounds that the testimony was immaterial and irrelevant under Arizona law. No issue can be raised on appeal with respect to evidence admitted by the trial court over the general objection that it is "irrelevant, immaterial and incompetent". Trial courts cannot err by overruling such an objection unless the evidence is, on its face, obviously inadmissible for any proper purpose. Advanced Living Center v. T. J. Bettes Company of California, 11 Ariz.App. 336, 464 P.2d 656 (1970); M. Udall, Arizona Law of Evidence § 12 (1960). Appellees' theory of the case is that appellant Dorothy Kington lost control of the vehicle when she slid out of from behind the steering wheel due to her failure to fasten her seat belt. We should first note that the evidence as to the non-use of the seat belt was not being offered in what we might term the "classic" seat belt defense case.

We need not decide whether or not failure to use a seat belt can constitute contributory negligence. In this case the appellees are claiming that the accident was caused by Mrs. Kington's failure to control her automobile which in turn was caused by her failure to properly fasten herself by the use of her seat belt. We believe such evidence is admissible in order to show the cause of the accident, there being a jury question whether a reasonable and prudent person under the circumstances should be wearing a seat belt.

The judgments of the trial court are reversed and the cases are remanded to the trial court for a new trial.

HATHAWAY, C. J., and KRUCKER, J., concur.