755 P.2d 1135

**Cindy LAW; Tom Law and Carol Law, husband and wife, Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and The Honorable Thomas W. O'Toole, Judge, Respondents,**

**James R. HARDER and Jean M. Harder, his wife, Real Parties in Interest.**

**No. CV–86–0607–PR.**

Supreme Court of Arizona.

Jan. 12, 1988.

Supplemental Opinion May 25, 1988.

Reconsideration Denied July 6, 1988.

Greer & Seletos by Robert L. Greer, Phoenix, for petitioners.

Kleinman, Carroll & Kleinman by Gregory P. Novak, Phoenix, for respondents and real parties in interest.

Haralson, Kinerk & Morey, P.C. by D. Dale Haralson, Denneen L. Peterson, Tucson, and Langerman, Begam, Lewis and Marks by Amy G. Langerman, Phoenix, for amicus curiae Arizona Trial Lawyers Ass'n.

Robbins & Green by William H. Sandweg, III, Robert L. Baumann, Phoenix, for amicus curiae Phoenix Ass'n of Defense Counsel.

FELDMAN, Vice Chief Justice.

This petition for review asks that we reinstate the trial judge's ruling forbidding discovery concerning seat belt use in a personal injury action. The basic question presented is whether Arizona should recognize the so-called "seat belt defense." We granted review to determine this issue of statewide importance and to settle a conflict of authority between the divisions of our court of appeals. Rule 23, Ariz.R.Civ. App.P., 17B A.R.S.; Rule 8(b), Ariz.R.P. Spec.Act, 17B A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTUAL AND PROCEDURAL SUMMARY

On the evening of November 8, 1985, Cindy Law was driving her parents' car in. Tempe, Arizona. She apparently pulled in front of an automobile operated by James Harder, who swerved violently to avoid a collision. Unfortunately, his evasive maneuver overturned the Harder vehicle. Harder and his wife were not wearing their seat belts and were thrown from their car —James through a closed sunroof. The Harders suffered severe orthopedic injuries as a result of the accident.

The Harders (plaintiffs) brought a negligence action against Cindy Law and her parents (defendants). During the course of discovery, defendants sought information concerning plaintiffs' use and experience with seat belts and shoulder restraints. Plaintiffs objected to these discovery requests on the grounds that the subject was irrelevant under the holding of *Nash v. Kamrath*, 21 Ariz.App. 530, 521 P.2d 161

(1974). In that case, division two of our court of appeals held that evidence of a passenger's failure to wear a seat belt was inadmissible either to show breach of a duty to minimize damages or to prove contributory negligence.

Defendants moved to compel discovery. In June 1986, the trial judge denied the motion and issued a protective order, concluding that under *Nash* motorists have no duty to wear seat belts. Thus, evidence of a causal connection between the failure to wear seat belts and the extent of plaintiffs' injuries was irrelevant. Stymied at the trial level, defendants filed a special action petition[1] with division one of the court of appeals, which granted jurisdiction.

The court of appeals vacated the trial judge's protective order and held that evidence of seat belt nonuse was admissible so long as defendants could demonstrate a causal relationship between the nonuse and the injuries. *Law v. Superior Court*, 157 Ariz. 142, 755 P.2d 1130 (App.1986). The court concluded that under the interrelated doctrines of avoidable consequences and mitigation of damages, motorists were responsible to take reasonable pre-accident measures to prevent or reduce damages from foreseeable injury. Failure to avoid or mitigate foreseeable damages would result in a corresponding reduction in the damages awardable. The court found that the absence of a mandatory state seat belt law did not negate the duty to mitigate damages. Nor did the comparative negligence statute (A.R.S. § 12–2505) limit the jury's power to reduce damages solely to cases of contributory negligence or assumption of the risk.

In their petition for review, plaintiffs ask us to resolve the conflict between this case and *Nash*. *See* Rule 23, Ariz.R.Civ.App.P., 17B A.R.S. Plaintiffs maintain that the *Nash* analysis is still valid and suggest several other reasons why this court should not sanction the introduction of evidence concerning seat belt nonuse as an aid to the apportionment of damages. Plaintiffs' ulti-

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Ariz.R.P. Spec.Act., 17B A.R.S.

mate contentions may be summarized as follows:

1. Motorists need not assume that they face danger from the negligence of others;

2. Seat belts cause as many injuries as they prevent;

3. There is no duty to wear seat belts;

4. The entire matter should be left to the legislature;

5. The victim's seat belt nonuse should not create a windfall for the tortfeasor;

6. The incorporation of evidence of seat belt nonuse would unduly complicate litigation;

7. Allowing the introduction of evidence on seat belt nonuse would initiate a series of unwanted and unforeseeable consequences for accident litigation in our state.

To resolve these issues, we must first examine the evolution of seat belt technology and its relationship to the law.

## I. AN OVERVIEW OF THE SEAT BELT PROBLEM

### A. *The Seat Belt Defense*

In late 1955, Ford and Chrysler first offered lap belts as optional equipment on their consumer automobiles.[2] In 1968, Federal Motor Vehicle Safety Standard No. 208 [3] required automakers to install a lap belt for each occupant as well as a shoulder harness for the outboard front occupants on all automobiles made after January 1968. State and federal requirements for seat belt [4] installation were a response to increasingly authoritative evidence that seat belts could prevent many deaths and injuries arising from automobile accidents.[5]

As seat belts became a standard automotive fixture, defendants increasingly raised the "seat belt defense." At first, defense attorneys attempted to use the defense as a complete bar to recovery by showing that plaintiff was contributorily negligent.[6] These efforts were generally unsuccessful.[7] Courts were unwilling to totally deny recovery based on a finding of contributory negligence when it was almost certain in every case that nonuse of the seat belt was not a cause of the primary accident.[8]

The focus of defense efforts rapidly shifted to asserting that the victim had failed to properly mitigate damages by not wearing a seat belt.[9] The mitigation theory sharply split the courts. Some jurisdictions accepted the idea that a plaintiff was responsible to take reasonable pre-accident safety measures.[10] Most courts refused to bend traditional mitigation concepts to cover the victim's pre-accident conduct.[11] Arizona followed this majority rule in *Nash*, decided in 1974. From that point until the

---

**2.** AMERICAN SAFETY BELT COUNCIL, THE AUTOMOTIVE SEAT BELT STORY (1970).

**3.** This regulation may be found in its current form at 49 C.F.R. § 571.208 (1986). It was promulgated under authority of the National Traffic and Motor Vehicle Safety Act of 1966. 15 U.S.C. § 1392 (1982).

**4.** As used in this opinion, the term "seat belt" encompasses those safety restraint devices now commonly installed in automobiles, including both shoulder harness and lap belts.

**5.** *See generally* Tourin, *Ejection and Automobile Fatalities*, 73 U.S.PUB.HEALTH REP. 381 (1968).

**6.** *See, e.g.,* Carmazzo & Flynn, *Failure to Use Seat Belts as a Basis for Establishing Contributory Negligence, Barring Recovery for Personal Injuries*, 1 U.S.F.L.REV. 227 (1967).

**7.** Comment, *Seat Belt Legislation and Judicial Reaction*, 42 ST. JOHN'S L.REV. 371 (1968).

**8.** *See, e.g.,* Kleist, *The Seat Belt Defense—An Exercise in Sophistry*, 18 HASTINGS L.J. 613 (March 1967). *See generally* Annotation, *Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence*, 92 A.L.R.3d 9 (1979). As used in the balance of this opinion, the term "seat belt defense" refers to the contention that damages attributable to nonuse of a seat belt may be proved in reduction of the damages otherwise recovered by a plaintiff.

**9.** *See generally* Annotation, *Nonuse of Seat Belt as Failure to Mitigate Damages*, 80 A.L.R.3d 1033 (1977).

**10.** *See, e.g., Bentzler v. Braun*, 34 Wis.2d 362, 149 N.W.2d 626 (1967); *Spier v. Barker*, 35 N.Y. 2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974).

**11.** *See, e.g., Miller v. Miller*, 273 N.C. 228, 160 S.E.2d 65 (1968); *Carnation Co. v. Wong*, 516 S.W.2d 116 (Tex.1974); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okla.1976).

present case, Arizona courts refused to allow defendants to use evidence of seat belt nonuse to prove either contributory negligence or failure to mitigate damages.

*Nash* was based upon a three-prong rationale. The first was that evidence of seat belt nonuse was irrelevant because it ran "counter to the traditional notion that, unless put on notice to the contrary, one has a right to assume that other persons upon the highway will not be negligent." 21 Ariz.App. at 532, 521 P.2d at 163, citing 2 F. HARPER & F. JAMES, THE LAW OF TORTS § 22.10 (1956). The court pointed out that a driver should have a reasonable expectation of safety on the highway and should not be required, therefore, to "truss himself up in every known safety apparatus" before driving. *Id.,* citing Kleist, *The Seat Belt Defense—An Exercise in Sophistry,* 18 HASTINGS L.J. 613 (March 1967). Of course, *Nash* was decided at a time when Arizona courts followed contributory negligence—a theory now transformed to comparative negligence by A.R.S. § 12–2505(A), which became effective August 31, 1984 and applies to the case under consideration. *See generally* Butler & Gage, *Comparative Negligence and Uniform Contribution: New Arizona Law,* 20 ARIZ.B.J. 16 (June/July 1984).

The next basis for the *Nash* analysis was the concept that use of a seat belt might in itself present dangers to motorists. If that were true, the law could hardly hold nonuse to be a violation of reasonable standards. As a corollary to the last mentioned principle, the court finally held there was no duty to fasten a seat belt, and failure to do so could not be considered a breach of any duty to minimize damages. 21 Ariz. App. at 532–33, 521 P.2d at 163–64.

We must now decide whether the *Nash* position should remain the proper rule for the state of Arizona. In our view, the technological and legal changes that have occurred in the twelve years that passed between *Nash* and the decision in the present case must determine which view of the law represents better policy. One of the most dramatic changes that has occurred in this period is the general acceptance of comparative negligence principles.

## B. *The Growth and Relevance of Comparative Negligence*

The rapid acceptance of comparative negligence principles in the United States came just after many jurisdictions had initially determined to accept or reject the seat belt defense under either contributory negligence or mitigation of damages theories. In 1960, only six states had adopted comparative negligence.[12] From 1965 to date, thirty-eight states have statutorily or judicially accepted comparative negligence.[13] Apparently only six states and the District of Columbia still adhere to the full contributory negligence defense.[14]

Traditional contributory negligence theory, of course, militates for rejection of the seat belt defense. Contributory negligence is conceptualized in terms of conduct by plaintiff which contributed to the occurrence of the accident. *See McDowell v. Davis,* 104 Ariz. 69, 72, 448 P.2d 869, 872 (1968). Because seat belt nonuse seldom contributes to the occurrence of the accident, it does not easily fit into the theory of contributory negligence. *But see Kington v. Camden,* 19 Ariz.App. 361, 507 P.2d 700 (1973) (if driver had fastened her seat belt, she would not have lost control of her vehicle and caused crash).

Further, if the seat belt defense is considered a form of contributory negligence, it would totally bar recovery. Theoretically, that was the situation under the former Arizona law. *McDowell, supra.* However, nonuse of a seat belt rarely causes all of plaintiff's injuries. In the typical accident, nonuse simply increases the number or severity of injuries beyond those which would have occurred had the plaintiff used a seat belt. Thus, under traditional contributory

---

12. *See generally* V. SCHWARTZ, COMPARATIVE NEGLIGENCE 1–3 (2d ed. 1986).

13. *Id.*

14. *Id.*

negligence principles, the seat belt defense would have constituted a harsh and untenable policy denying all recovery to non-users, despite the lack of any causal nexus between seat belt nonuse and some of the injuries.

Comparative negligence theories eliminate most of those problems because an adverse finding on nonuse does not bar recovery but merely reduces the damages in proportion to the contributing factor of seat belt nonuse. Thus, since *Nash*, courts originally unwilling to enforce a total bar to plaintiff's recovery under contributory negligence now are able to make a proportionate reduction of damages under comparative negligence concepts.[15] This, in fact, furthers the basic goal of comparative negligence theory—to allow an appraisal of all relevant facts in determining the correct damages to be given each claimant in a personal injury case.[16]

Given this choice, courts able to apply comparative negligence principles to seat belt defense cases broke their analysis into at least two steps. Nonuse of the seat belt generally was not a factor contributing to the accident. However, by failing to use available seat belts, the plaintiff might have enhanced the injuries over those which would have occurred if the belts had been used.[17] Thus, to ascertain the proper damages, the emphasis switched to this "second collision" between the occupants and their environment.[18] Even with this new focus, the difficulty of determining the complex calculus of all conceivable causal connections involved in any accident dissuaded some courts from recognizing the defense.[19] Nevertheless, the rise of comparative negligence undermined much of the theoretical basis for rejection of the defense. At the same time, the law was beginning to catch up with technology.

## C. Legislation Requiring Seat Belt Installation and Use

Most seat belt systems are not "passive"; the user must "buckle up." As the years passed following the start of widespread seat belt installation, designers and engineers devised safety restraint systems that were entirely passive.[20] It is now possible to equip automobiles with automatic harness or air bag systems that do not need to be manually activated.[21] Because of the expense of these devices, manufacturers have strenuously objected to installing them as standard equipment.[22] Faced with overwhelming evidence that passive restraint systems would save many lives and prevent countless injuries, in 1984 the National Highway Traffic Safety Administration adopted changes to Federal Motor Vehicle Safety Standard No. 208 requiring the installation of passive restraints in all new cars starting with model year 1990, unless states containing at least two-thirds of the nation's population enact mandatory seat belt *use* statutes before the regulation's

---

15. *See* Miller, *The Seat Belt Defense Under Comparative Negligence*, 12 IDAHO L.REV. 59 (1975) (rejection under prior contributory negligence standards would not preclude judicial reevaluation under comparative negligence). *See also* Sullivan, *The Seat Belt Defense Should be Resurrected Under Pure Comparative Negligence*, 61 MICH.B.J. 560 (1982).

16. Hoglund & Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law*, 50 WASH.L.REV. 1, 14 (1974).

17. Ackerman, *The Seat Belt Defense Reconsidered: A Return to Accountability in Tort Law?*, 16 N.M.L.REV. 221 (Spring 1986).

18. *See generally* Werber, *A Multi–Disciplinary Approach to Seat Belt Issues*, 29 CLEVE.ST.L. REV. 217 (1980).

19. *See, e.g., Foley v. City of West Allis*, 113 Wis. 2d 475, 335 N.W.2d 824 (1983). *See also* McChrystal, *Seat Belt Negligence: The Ambivalent Wisconsin Rules*, 68 MARQ.L.REV. 539 (Summer 1985) (discussion of *Foley* and complex evolution of law on the subject).

20. *See, e.g.*, Warner, *Bags, Buckles and Belts: The Debate Over Mandatory Passive Restraints in Automobiles*, 8 J.HEALTH POL., POL'Y & LAW 44 (1983).

21. *See* Frank, *Pumped Up Issue: Clash Seen on Airbags*, 71 A.B.A.J. 22 (Aug.1985).

22. *See* Note, *A Compromise Between Mitigation and Comparative Fault?: A Critical Assessment of the Seat Belt Controversy and a Proposal for Reform*, 14 HOFSTRA L.REV. 319 (Winter 1986).

effective date.[23] The federal standard also requires that conforming state statutes contain provisions specifying that violation of the seat belt law may be used to mitigate damages in any post-accident civil litigation and that nonuse will result in a criminal penalty of at least twenty-five dollars.[24]

Prior to the promulgation of the new federal rule, no state had enacted a law requiring motorists to use seat belts.[25] It now appears that over twenty states have enacted at least some form of such legislation.[26] It remains to be seen whether these new laws will meet the federal requirements and whether courts will use them to impose a statutory "duty" to wear seat belts for purposes of establishing fault and assessing damages in tort litigation. Arizona has not yet passed any general legislation mandating seat belt use. *But see* A.R.S. § 28–907 requiring seat belt use for children four years old or younger.

## II. THE SEAT BELT DEFENSE IN ARIZONA

With the foregoing in mind, we must now decide whether Arizona will adopt some version of the so-called seat belt defense. To do so, we first examine the current validity of the principles underlying the *Nash* decision.

### A. *The Probability of Motor Vehicle Accidents*

Because *Nash* held that motorists could assume that all who use the highways will drive with care, the decision imposed no duty to anticipate injury. Over a lifetime, however, it is almost certain that a motor vehicle accident *will* injure the average motorist.[27] The clear foreseeability of automobile accidents is the reason most courts now hold automobile manufacturers responsible to make vehicles capable of providing a reasonable level of protection to automobile occupants. *See, e.g., Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968) (original case adopting crashworthiness doctrine). Our court of appeals recently applied this theory to the design of motorcycles. *Cota v. Harley Davidson, A Division of AMF, Inc.*, 141 Ariz. 7, 12–14, 684 P.2d 888, 893–95 (App.1984).

Given modern-day conditions, we conclude as a matter of public policy that the law must recognize the responsibility of every person to anticipate and take reasonable measures to guard against the danger of motor vehicle accidents that are not only foreseeable but virtually certain to occur sooner or later. Rejection of the seat belt defense can no longer be based on the antediluvian doctrine that one need not anticipate the negligence of others. There is nothing to anticipate; the negligence of motorists is omnipresent.

### B. *Seat Belts as a Cause of Harm*

In *Nash*, the court noted that seat belts may actually create or enhance injuries instead of preventing them. 21 Ariz.App. at 532, 521 P.2d at 163. There are reports of tragic situations when wearing a seat belt may trap a vehicle occupant in a burning, sinking, or disabled automobile.[28] Such cases are noteworthy precisely because they are so rare.[29] It is statistically far

**23.** *See* Benguerel, *Mandatory Seat Belt Legislation: Panacea for Highway Traffic Fatalities?*, 36 SYRACUSE L.REV. 1341 (1986).

**24.** 49 C.F.R. §§ 571.208 S.4.1.5.2(c)(1) and S.4.1.5.2(c)(2) (1986).

**25.** *See generally* Note, *Reallocating the Risk of Loss in Automobile Accidents by Means of Mandatory Seat Belt Use Legislation*, 52 S.CAL.L. REV. 91 (1978).

**26.** *See, e.g.,* Note, *The Seat Belt Defense and North Carolina's New Mandatory Usage Law*, 64 N.C.L.REV. 1127 (June 1986).

**27.** *See, e.g.,* Hoglund & Parsons, *supra*, 50 WASH.L.REV., at 3.

**28.** *See* Note, *The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts,* 56 NOTRE DAME LAW. 272, 286 (1980).

**29.** An agency of the federal government has calculated that the use of seat belt systems by all automobile occupants could reduce fatalities and serious injuries by one-half each year. UNITED STATES DEPARTMENT OF TRANSPORTATION, NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, PROGRESS AND

safer for motorists to remain in their vehicles than to suffer the vagaries of a violent ejection from the automobile.[30] There are also claims that properly worn seat belts can cause direct and serious harm to users. These assertions focus on abdominal and spinal injuries that may be attributable to seat belt use. However, it is also true that in almost every instance seat belt-induced injuries are far less drastic than those that would have been incurred without the seat belt use.[31] As a general rule, a motorist is simply better off wearing a seat belt.[32] We conclude from the technological data that continued nonrecognition of the seat belt defense cannot be based on the general concept that seat belts cause harm. The opposite is generally true.

### C. The "Duty" to Wear Seat Belts

*Nash* held there was no duty to wear seat belts. We acknowledge that "duty" to use restraints is generally considered the prime question in cases such as this. *See, e.g., Clarkson v. Wright*, 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268 (1985) (a decision relied upon by the trial court in the present action). Whatever its relevance to the *Nash* analysis, however, we do not believe that duty in its usual formulation remains a relevant component of the seat belt defense analysis. "Duty" is normally defined in terms of the obligation of care owed to one's neighbors. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985). The problem, of course, is to determine who is a "neighbor." W. PROSSER & W. KEETON, THE LAW OF TORTS § 75, at 535 (5th ed. 1984). Because in all but the rarest situation nonuse

of a seat belt presents no foreseeable danger to others, it is probably incorrect to conceptualize the seat belt defense in terms of duty.

More importantly, evaluating seat belt nonuse under the rubric of duty fundamentally confuses that concept with the evaluation of the conduct that may or may not fulfill it. Duty is the "obligation, recognized by law, which requires [an actor] to conform to a particular standard of conduct in order to protect others against unreasonable risk of harm." *Markowitz*, 146 Ariz. at 354, 706 P.2d at 366, citing *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). As indicated in *Markowitz*, we do not believe the concept of duty should be confused "with specific details of conduct." 146 Ariz. at 355, 706 P.2d at 367, citing *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984).

Everyone has a "duty" to use due care to prevent injury to others. Nonuse of a seat belt is not a question of duty but rather a matter of conduct which only occasionally impinges on others.[33] Thus, we believe that injuries sustained by the plaintiff as a result of his nonuse of an available seat belt are not so much a failure to use care to avoid endangering others but part of the related obligation to conduct oneself reasonably to minimize damages and avoid foreseeable harm to oneself. *Markowitz, supra; Coburn, supra.*

Thus, the seat belt defense would ordinarily raise issues concerning the doctrine of avoidable consequences—a theory that denies recovery for those injuries plaintiff could reasonably have avoided. W. PROS-

---

ASSESSMENT REPORT IN THE NATIONAL SAFETY BELT USAGE PROGRAM (Sept.1983).

**30.** *See generally* Harris, *Enhanced Injury Theory: An Analytic Framework*, 62 N.C.L.REV. 643, 682–83 (1984).

**31.** *See generally* Werber, *supra*, 29 CLEVE.ST.L. REV., at 236–38.

**32.** *See also Motor Vehicle Manufacturers Association v. State Farm Mutual Auto Insurance Co.*, 463 U.S. 29, 53, 103 S.Ct. 2856, 2871, 77 L.Ed.2d 443 (1983) ("We start with the accepted ground ground that if used, seat belts unquestionably would save many thousands of lives and would

prevent tens of thousands of crippling injuries.").

**33.** For instance, an adult driver who has a legal duty of due care to passengers in his automobile arguably might be held liable for negligence in failing to fasten the seat belt of a young child riding in the car. The motorist who fails to buckle up while driving and, as a result, loses control so that the car strikes another vehicle, might have negligently breached his duty of due care to other users of the highway. *Kington, supra.*

SER & W. KEETON, *supra,* at 458. Plaintiffs argue that this doctrine is applied only to post-accident conduct and is inapplicable to events preceding the accident—a time when plaintiffs supposedly had a right to assume that others would not act negligently.[34] Assuming this is ordinarily true, we believe the common law conceptualization of the doctrine of avoidable consequences has been modified by our comparative negligence statute, which applies that doctrine to pre-accident conduct.

### D. *The Comparative Negligence Statute*

When the Arizona legislature enacted the Uniform Contribution Among Tortfeasors Act in 1984, it added several important provisions to the model law delineated in 12 U.L.A. 63–107 (1975). These new sections constituted the statutory adoption of comparative negligence for our state. A.R.S. §§ 12–2505 to –2509. In any given case, the relevance of comparative negligence principles is normally a question for the jury. *Cheney v. Superior Court,* 144 Ariz. 446, 698 P.2d 691 (1985). If the jury does apply comparative negligence standards, the plaintiff's action is not barred, "but the full damages shall be reduced in proportion to the relative degree of *fault which is a proximate cause of the injury or death,* if any." A.R.S. § 12–2505(A) (emphasis added).

The essential question is whether a plaintiff who does not wear an automobile seat belt is at "fault" for injuries enhanced or caused by the failure to use the seat belt. Neither the Arizona comparative negligence statute nor its progenitor uniform law contains any definition of "fault." We do note the instructive definition of this term given in § 1(b) of the Uniform Comparative Fault Act (UCFA), 12 U.L.A. 39–40 (Cum.Supp.1987).

"Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. *The term also includes ... unreasonable failure to avoid an injury or to mitigate damages.* Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

(Emphasis added.) As stated in the official comment to the UCFA, negligent failure to use a seat belt would reduce damages solely for those injuries directly attributable to the lack of seat belt restraint. *Id.* Thus, as far as the calculation of damages is concerned, the comparative negligence statutes apply the doctrine of avoidable consequences to pre-accident conduct.

We are further guided in our determination of the fault issue by a series of well-reasoned seat belt cases from other comparative negligence jurisdictions. The first case is *Insurance Company of North America v. Pasakarnis,* 451 So.2d 447 (Fla. 1984), *quashing* 425 So.2d 1141 (Fla.Dist. Ct.App.1982). In that case, defendant sought to reduce the overall damages by introducing evidence of plaintiff's nonuse of a seat belt. The Florida Supreme Court concluded that the obvious importance of the seat belt as a safety precaution made its nonuse a pertinent factor for the jury to evaluate. The court properly refused to base its analysis on concepts of duty and focused instead on the plaintiff's conduct:

Nonuse of the seat belt may or may not amount to a failure to use reasonable care on the part of the plaintiff. Whether it does depends on the particular circumstances of the case. Defendant has the burden of pleading and proving that the plaintiff did not use an available and operational seat belt, that the plaintiff's failure to use the seat belt was unreasonable under the circumstances, and that there was a causal relationship between the injuries sustained by the plaintiff and plaintiff's failure to buckle up. If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this

---

**34.** Plaintiffs may be wrong in attempting to limit the common law doctrine of avoidable consequences to post-accident conduct. *Id.* at

459. *See, e.g., O'Keefe v. Kansas City Western Railway Co.,* 87 Kan. 322, 124 P. 416 (1912).

factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced. Nonuse of an available seat belt, however, should not be considered by the triers of fact in resolving the issue of liability unless it has been alleged and proved that such nonuse was a proximate cause of the accident.

451 So.2d at 454.

In *Smith v. Goodyear Tire & Rubber Co.*, 600 F.Supp. 1561 (D.Vt.1985), the court responded as follows to assertions that it was improperly imposing a "duty" to wear seat belts:

> We are unpersuaded by such reasoning. First, *admitting such evidence would not create a duty but would merely allow the jury to consider the information on the question of negligence.* Second, the test of negligence would continue to be whether the person acted *reasonably under the circumstances presented.* The jury's discretion and common sense will remain as a check upon parties that might seek to make wild assertions of negligence. We do not presume to decide whether or not Plaintiff's failure to fasten his seat belt in the instant case was reasonable. We do believe, however, that the arguments on both sides of the issue are such that a reasonable jury could decide either way.

600 F.Supp. at 1564 (first emphasis added; second emphasis in original).

Finally, in *Lowe v. Estate Motors, Ltd.*, 428 Mich. 439, 410 N.W.2d 706 (1987), the Michigan Supreme Court considered the nonuse of seat belts as comparative negligence in an automobile products liability lawsuit. The Michigan Supreme Court also held that the duty issue was not the central problem. *Id.* at 461, 410 N.W.2d at 715. The court reinstated the trial judge's denial of the plaintiff's exclusionary motions. *Id.* at 475, 410 N.W.2d at 721. *See also Hutchins v. Schwartz*, 724 P.2d 1194, 1199 (Alaska 1986) (nonuse of seat belts is a relevant factor in apportioning damages in a state that has adopted comparative negligence by judicial decision).

Our examination of the applicable caselaw and our analysis of the concept of "duty" lead us to the conclusion that the seat belt defense is not a question of duty at all. We reject those cases, such as *Clarkson, supra,* that rely on the absence of "duty" to reject the seat belt defense. We also disapprove the *Nash* analysis. At least under the comparative fault statute, each person is under an obligation to act reasonably to minimize foreseeable injuries and damages. Thus, if a person chooses not to use an available, simple safety device, that person may be at "fault."

E. *Preempting the Role of the Legislature*

Plaintiffs claim that recognition of the seat belt defense is a matter we should leave to the legislature. The Arizona legislature has not passed any law mandating the use of seat belts except A.R.S. § 28–907, which basically requires the use of restraint systems only for children under four years of age. The child restraint law specifically precludes admission of evidence of nonuse in civil proceedings. A.R.S. § 28–907(H). Of course, young children could hardly be held at "fault" for failure to buckle up; with or without the statutory provision, we could not diminish a civil recovery for an infant whose parent, guardian, or custodian failed to place the child in a proper restraint system. *See Town of Flagstaff v. Gomez*, 23 Ariz. 184, 202 P. 401 (1921). Thus, we do not infer from this specific prohibition dealing with infants a general legislative intent to forbid the introduction of evidence that an *adult* motorist unreasonably failed to use a seat belt and enhanced his own injuries. Allowing the jury to assess damages by considering an adult's failure to use seat belts does not conflict with the seat belt statute and does conform to our statutory comparative negligence scheme. We are furthering the statutory objectives in this area, not contradicting them.

Some courts hold that creation of a "seat belt defense" is solely a matter for legislative action. *See, e.g., Thomas v. Henson*, 102 N.M. 326, 695 P.2d 476 (1985), *rev'g* 102

N.M. 417, 696 P.2d 1010 (App.1984); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 62 (Okla.1976). We believe, however, that this court has an obligation to participate in the evolution of tort law so that it may reflect societal and technological changes. *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985). In some cases, this responsibility has compelled us to recognize duties that further public policy and legislative objectives, even though the specifics have not been enacted by the legislature. *See, e.g., Ontiveros, supra.*

Acceptance of the seat belt defense does not require us to violate the proper deference owed the legislature. We neither carry a legislative enactment past the intent which existed at the time of its passage nor recognize an obligation not already reflected in the lives of our citizens. We only acknowledge reality: the use or nonuse of a seat belt is an everyday matter of conduct which plays a significant role in determining the extent of injuries. To hold that we cannot let a jury consider such conduct on the issue of damages is to judicially transmogrify legislative nonaction on a common law damage issue into legislative intent to approve nonuse of seat belts. Such a conclusion has never been expressed by the legislature and is very far from the demonstrated legislative objectives in this area. Of course, if we are wrong, and if the legislature intends that in this state one may unreasonably refuse to use a seat belt and nevertheless hold another responsible for the resulting damages, it can easily enact such a policy.

## F. *Windfall to the Tortfeasor*

Plaintiffs claim that by recognizing the seat belt defense, we would confer a windfall on tortfeasors. As noted *ante,* the crux of comparative negligence is a proper apportionment of damages based upon the fault of the respective parties. If a victim unreasonably failed to use an available, simple prophylactic device, then he will not be able to recover for damages created or enhanced by the nonuse.[35] Thus, although some tortfeasors may pay less than they otherwise *would,* they will not pay less than they *should.* We do not believe this rule creates a windfall to the tortfeasor; it is an unavoidable consequence of our comparative negligence system.

## G. *Undue Complication of Litigation*

Petitioners maintain that allowing apportionment of damages based on failure to use seat belts will unnecessarily complicate and protract litigation. The defendant must establish several factual predicates before seat belt nonuse may be presented to the jury. *See Pasakarnis, supra.* To prove these factors, the defendant may utilize qualified experts in the medical, scientific, and accident reconstruction fields. It is then up to the factfinder to evaluate the evidence and quantify the results under comparative negligence principles.

Of course, this process will take time and create new issues for the jury to decide. These problems are hardly insurmountable. Juries perform this type of operation on a regular basis in many types of civil and criminal cases. The very idea of comparative negligence requires that juries apportion fault. The same is true when juries apportion fault between joint tortfeasors. *See* A.R.S. § 12–2506 (apportionment of fault under comparative negligence and contribution statute). In some second impact or so-called "crashworthiness" cases, juries are required to determine the injuries attributable both to the original accident and to a manufacturer's failure to produce an automobile capable of withstanding foreseeable accidents. *See* discussion in *General Motors Corp. v. Edwards,* 482 So.2d 1176, 1189 (Ala.1985). Courts

---

**35.** Such a rule may even encourage motorists to take the few seconds necessary to employ their safety restraints. *See, e.g.,* Note, *Self-Protective Safety Devices: An Economic Analysis,* 40 UNIV. CHI.L.REV. 421, 427–41 (1973) (liability for harm should be assigned to the party for whom prevention of harm is cheapest). We acknowl- edge the puzzling fact that most drivers and motorists do not use seat belts. Note, *supra,* 56 NOTRE DAME LAW., at 281. The fact that a majority of motorists presently behave irrationally does not make that conduct reasonable as a matter of law.

almost universally entertain such actions, even though some recognize the complications produced by injury apportionment. *Id.*

There is no doubt that the seat belt defense will complicate and lengthen litigation in some cases. While this certainly does not militate in favor of its acceptance, we believe the problem is no different in principle from that posed by any legal, technological or scientific advance. Neither law nor society can ignore technological change simply because it makes decision more complex.

### H. *Unwanted and Unforeseen Consequences*

As the final argument, plaintiffs assert that introducing evidence of seat belt nonuse would propel our courts into a morass of unforeseen consequences. If seat belt nonuse is relevant, why not introduce evidence of failure to install air bags? Why not hold the plaintiff responsible for failure to buy a large car which is normally much safer in a crash than a small car?

We are faced with a concrete application of comparative negligence principles. We deal in this case only with a plaintiff's use or nonuse of a common, simple safety device *available* in his or her car. In making use of an available seat belt, a motorist need not possess engineering expertise, suffer significant inconvenience, install special equipment or purchase a different vehicle. He or she need use only a few seconds to fasten a convenient safety device. The exact bounds of fault in other fact situations is a matter for the common law to address in its customary evolutionary fashion. *Ontiveros*, 136 Ariz. at 504, 667 P.2d at 204.

### I. *Resolution*

We conclude that irrespective of a duty to avoid injuring others, under the theory of comparative "fault," nonuse of a seat belt is a factor that the jury may consider and use to reduce damages under the following conditions:

1. Where the date of the injury is after the effective date of the comparative negligence statute.

2. Where the injured party is of an age and discretion that his or her nonuse could be considered as "fault."

3. When the nonuse was unreasonable under all of the circumstances. Of course, art. 18, § 5 of our Constitution protects the jury's right to determine whether nonuse of a safety restraint is negligent and, if so, the consequences of that negligence. *Hall v. A.N.R. Freight System, Inc.*, 149 Ariz. 130, 133–37, 717 P.2d 434, 437–41 (1986).

4. Where nonuse either causes injuries which would not have occurred had the restraint been used or enhances those injuries that did occur.

5. Where the evidence shows with reasonable probability the degree of enhancement.

The burden of establishing these matters, as with other matters of comparative negligence, is upon the defendant. *See, e.g., Dura Corporation v. Harned*, 703 P.2d 396, 404 (Alaska 1985). Further, the jury must be clearly instructed that nonuse of a seat belt is an issue bearing upon the extent of damages that may be recovered and not on any other issue.

### CONCLUSION

Within the analytical framework of this opinion, we recognize the seat belt defense as a matter which the jury may consider in apportioning damages due to the "fault" of the plaintiff. Accordingly, in appropriate cases discovery will be available on the issue of nonuse.

We approve the portions of the opinion by the court of appeals that conform to this opinion. This case is remanded to the trial court for further proceedings consistent with our holding.

GORDON, C.J., and CAMERON, J., concur.

MOELLER, J., did not participate in the determination of this matter.

**158**

HOLOHAN, Justice, dissenting.

In my judgment the court's opinion, in adopting the so-called "seat belt defense," confuses principles of liability and damages, represents poor judicial policy, and is unfair to the appellee plaintiffs; therefore, I dissent.

The court adopts an analytical approach based on principles of comparative negligence. The starting point for the court's position is that the nonuse of a seat belt may be considered "fault." Next, the court adopts a definition of "fault" found in the Uniform Comparative Fault Act. At 154, 755 P.2d at 1142. The fact that Arizona has not adopted the definition used in the uniform act seems to be deemed of little significance by the court.

Reliance on comparative negligence principles is inconsistent with and serves to confuse that concept as it has been adopted in this state. Comparative negligence in Arizona occurs *only* when the defense of contributory negligence or assumption of risk has been found and applied by the jury. A.R.S. § 12–2505.[1] Without contributory negligence or assumption of risk there is no comparative negligence. The nonuse of a seat belt in this case and in most cases is usually not a cause of the accident, so the failure to wear a seat belt is not contributory negligence. Thus, the use of a comparative negligence analysis serves to confuse the principles applicable to the issue under Arizona law.

The observations of Judge Weis of the 3rd Circuit on the subject are instructive.

Mitigation and apportionment of damages are different concepts than contributory or comparative negligence. Contributory negligence frees the defendant from liability and all responsibility for damages. Comparative negligence appraises the factors which caused the impact, collision or similar event and uses the relative degree of fault to reduce the damages. Mitigation or apportionment of damages and avoidable consequences, on the other hand, are directed toward activity (or nonaction) having a direct bearing on the extent of injury *but not on the conduct causing the litigated event.* (Emphasis supplied.)

\*      \*      \*      \*      \*      \*

The monetary result reached by apportioning damages may be the same as in application of comparative negligence but the factors leading there must be distinguished. By way of illustration, it may be helpful to examine the results which could occur in a routine intersection accident case in a state which applies comparative negligence and also apportionment of damages. A jury might well determine that driver A was ten percent at fault for failing to observe driver B going past a stop sign, and also that if driver A had been wearing a seat belt, his damages would have been twenty percent less than those actually sustained. Both factors would then be applied to reduce the amount recoverable. Because the same result can be reached under comparative negligence without concern over whether the plaintiff's conduct goes to liability or damages, there is a tendency to blur the line between them.

The concepts of liability and damages are distinct and must be kept so.

*Vizzini v. Ford Motor Co.,* 569 F.2d 754, 769–70 (3rd Cir.1977) (Weis, J., concurring and dissenting).

It is not necessary or correct to use a comparative negligence formula to arrive at the ruling by the court. If the "seat belt defense" is to be adopted, Judge Weis suggests that the doctrine of avoidable consequences is more appropriate.

---

1.  **§ 12–2505. Comparative negligence; definition**

> **A.** The defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury. If the jury applies either defense, the claimant's action is not barred, but the full damages shall be reduced in proportion to the relative degree of the claimant's fault which is a proximate cause of the injury or death, if any. There is no right to comparative negligence in favor of any claimant who has intentionally, wilfully or wantonly caused or contributed to the injury or wrongful death.
>
> **B.** In this section, "claimant's fault" includes the fault imputed or attributed to a claimant by operation of law, if any.

Restatement (Second) of Torts § 433 provides for apportionment of damages when plaintiff's conduct was a factor in the harm and comment f explains that the doctrine of avoidable consequences is an application of the rule. Because avoidable consequences applies to actions taken after the impact, it has been said to be inapplicable to the seat belt defense. That distinction has not always been observed, however, and should not be controlling in this case. Simply because the correct pigeon-hole for the legal theory is not immediately apparent does not mean that critical evidence should be disregarded. Its relevance is apparent. The test should be not when the challenged activity or nonactivity took place; rather, the focus should be whether it played a part in producing the event or was totally unrelated to that event and affected only the injury. The inquiry should not be chronological, but causal. (Footnotes omitted.)

*Vizzini,* 569 F.2d at 770.

Using an expansion of the avoidable consequences theory makes more sense than attempting to wedge a solution under socalled comparative negligence principles. The seat belt defense deals with diminution of damages and not with the existence of a cause of action. Diminution of damages is appropriate when the injured party could have avoided some of the injury by the use of reasonable efforts. Full recovery is denied because part of the harm is due to the injured person's lack of care, and public policy requires that persons should be discouraged from wasting their resources, both physical or economic. *See* Restatement (Second) of Torts § 918 comment a (1977).

### PUBLIC POLICY

Whether the court's comparative negligence principles or the theory of avoidable consequences is employed, we are ultimately faced with the vital issue in this case—Public Policy. Despite the court's claim that nonuse of a seat belt is not a question of duty (at 153, 755 P.2d 1141), this decision imposes upon all motorists and passengers of this state the duty to wear seat belts, and it fixes the penalty for nonuse as reduction of the amount of damages to be recovered by an injured motorist or passenger. It is pure sophistry to declare that the decision today does not impose a specific duty on all to make use of seat belts. The court declares this non duty as part of its "obligation to participate in the evolution of tort law." At 156, 755 P.2d 1144.

Implicit in the court's decision is the rationale that seat belts should be used, and it is time that all of us used them. Although we held no hearings on the subject, the technical literature and opinions of experts seems to support the utility of using seat belts. The important consideration is who should make the decision to impose the duty (or non duty)? What branch of government under our constitutional system should make such a public policy decision?

Some courts such as our colleagues in our neighboring state of New Mexico faced with a similar problem, held that the creation of a "seat belt defense" is a matter for the legislature, not for the judiciary. *Thomas v. Henson,* 102 N.M. 326, 695 P.2d 476 (1985). There are sound reasons for such a position, none of which have apparently been considered by this court in its rush to "participate in the evolution of tort law."

Public policy exists only as long as there is public support. Courts decide matters, institutionally, without regard to public support. Protecting the constitutional rights of unpopular individuals or groups often involves deciding matters against public opinion, but in doing so, courts perform their well-recognized "judicial function." Courts, however, make poor law makers. They make law on a case-by-case method usually with limited information and without a legislator's concern for public support.

In the case at issue the new policy is imposed retroactive to November 8, 1985, the date of the appellees' accident. Such action would, generally, be foreign to the legislative system. Absent an emergency situation, the Arizona Constitution provides

that a legislative act does not become effective for ninety days after the close of a legislative session. Ariz. Const. art. IV, pt. 1, § 1(3). Such a delay in the effective date of legislation provides not only the opportunity for mounting a referendum, but it also affords an opportunity for the public to be made aware of the new obligations created by the legislative act. Under the court's decision today not only is no period of time allowed for public awareness of the new obligation, but the obligation and its consequences are made retroactive to a date over two years ago. This type of judicial action represents the worst form of "law making."

There is more involved in this matter than the development of tort law. We are urged to adopt a rule which may reduce the recovery of the plaintiff in this case, but the rule may also result in lessening the extent of personal injuries in future automobile accidents. The latter is certainly a good objective, but in this area of public safety the courts, with the case-by-case method, are powerless to provide a comprehensive program of policy, enforcement and education. The legislative branch is the proper one to deal with this complex problem if there is to be an effective and unified solution.

## RETROACTIVITY

Whatever else may be said about the court's decision, it seems grossly unfair to apply this new rule to these plaintiffs. The rule in *Nash* has been the law of this jurisdiction since 1974. Without any suggestion to the contrary, the rule has been that nonuse of a seat belt was deemed irrelevant to the damage issue in an automobile personal injury case. The court's decision today not only overrules *Nash*, but it does so retroactive to November 8, 1985, the date of the accident in this case. Such a dramatic change in law should at least be prospective.

## SUPPLEMENTAL OPINION

FELDMAN, Vice Chief Justice.

Plaintiffs have moved for reconsideration of our opinion. Rule 22, Ariz.R.Civ.App.P.,

17B A.R.S. They argue that the opinion should be reversed or modified. First, they argue that the original opinion should be withdrawn in its entirety, primarily because the court incorrectly based its decision on a definition of "fault" specifically rejected by the Arizona legislature when it adopted comparative negligence in 1984. Second, if the opinion is to stand, they urge that it should only operate prospectively.

## DEFINITION OF "FAULT"

Contrary to plaintiffs' assertions, the opinion in this matter was not "based" on the definition of fault found in § 1(b) of the Uniform Comparative Fault Act (UCFA), 12 U.L.A. 39–40 (Supp.1988). We simply noted that definition as one explanation of the fault concept as it has evolved in recent decades. Moreover, we do not think that the tangled legislative history of the 1984 Uniform Contribution Among Tortfeasors Act (UCATA) (codified at A.R.S. §§ 12–2501 *et seq.*) reveals any hint that the Arizona legislature rejected the UCFA definition of "fault." We therefore decline plaintiffs' invitation to reconsider our decision based on an alleged definitional error.

## RETROACTIVE VERSUS PROSPECTIVE APPLICATION

We find more merit, however, in plaintiffs' argument that the decision should only receive prospective application. Unless otherwise specified, Arizona appellate opinions in civil cases operate both retroactively and prospectively. *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982). The rule in favor of retroactivity may be overcome and a decision given only prospective effect if three conditions are present:

1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Retroactive application would adversely affect the purpose behind the new rule; and

3. Retroactive application would produce substantially inequitable results.

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Brannigan v. Raybuck,* 136 Ariz. 513, 520, 667 P.2d 213, 220 (1983). *See also Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973).

The decision of whether an opinion will only be applied prospectively involves a balancing of these three factors. *See Bernstein v. Aetna Life & Casualty,* 843 F.2d 359, 362–363 (9th Cir.1988) (review of Arizona rules on retroactivity).

### A. *New Legal Principle*

The opinion in this case applied new, statutory comparative fault doctrines to scientific and technological advances. We believed, and still believe, that the adoption of comparative fault as a linchpin of tort jurisprudence required no more than the extension of existing legal principles to impose personal responsibility for one's use or nonuse of a safety device. We agree with the Laws' argument that the original opinion therefore imposed no novel duty but simply allowed a jury hearing a comparative negligence case to reduce damages to reflect a plaintiff's failure to use reasonable care for his or her own safety. Thus, as the Laws contend, there was "[no] mighty change in [the] substantive law."

While this is true, however, the consequences of extending comparative negligence to the seat belt issue were certainly far from clear, with many comparative negligence jurisdictions adhering to the view that nonuse of a seat belt was not a factor to be considered in assessing damages. *See, e.g., Clarkson v. Wright,* 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268 (1985). Further, *Nash v. Kamrath,* 21 Ariz.App. 530, 521 P.2d 161 (1974), was unequivocal Arizona authority for the proposition that no legal consequences flowed from nonuse of a seat belt. Except for those with the gift of judicial prophecy, therefore, the decision of our court of appeals in this case was not clearly foreshadowed by Arizona caselaw. This factor therefore weighs against retrospective operation.

### B. *Adverse Effect on Purpose Behind the Rule*

The present decision embodied several mutually consistent goals. On one level, the case settled a conflict of authority between the divisions of our court of appeals and determined difficult issues of statewide importance. At a deeper level, the opinion constituted an advance in the continuing evolution of tort law, furthering concepts of personal responsibility and accountability by recognizing the obligation of each person to act reasonably in light of modern-day advances in knowledge and technology. 157 Ariz. at 156, 755 P.2d at 1144. The principles espoused in this case, as in all tort opinions, were designed and intended to encourage safe and responsible conduct. From that perspective, retroactive application might not foster the purpose of the rule we adopted. We cannot encourage greater seat belt use in the past.

On the other hand, most people were well aware of the practical need to buckle up and the dangers of not doing so. Retrospective operation emphasizes the need to modify future behavior. All of this suggests at most that the balance on this factor is even.

### C. *Substantially Inequitable Results*

The final factor to be considered is basically a question of equity.

> "[W]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Coons v. American Honda Motor Co.,* 96 N.J. 419, 427, 476 A.2d 763, 768 (1984), *cert. denied,* 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985), quoting *Huson,* 404 U.S. at 107, 92 S.Ct. at 355. There is little question that the balance of equities on this factor tips strongly against retroactive application. If applied retroactively, this opinion would result in lower damage recoveries for some accident victims because they failed to use seat belts at a time when no statute required their use and caselaw made it clear that not buckling up was a

reasonable course of action involving no adverse legal consequences. It is only from the date of decision in this case that legal consequences attached to the conduct in question. Of course, we do not indulge in the fantasy that motorists consulted *Nash* before deciding whether to use seat belts. Nevertheless, opinions such as *Nash* and this play a substantial part in setting standards for reasonable conduct.

■ Weighing the foregoing factors, we conclude that the balance falls heavily on the side of limiting the decision's effect to prospective application. We realize full well such a holding is contrary to the thrust of the initial decision. *See* 157 Ariz. at 157, 755 P.2d at 1145. To those unhappy with the change, there are two possible answers. The first is to say, as did Baron Bramwell over one hundred years ago, that "[t]he matter does not appear to me now as it appears to have appeared to me then." *Andrews v. Styrap*, 26 L.T.R. 704, 706 (Ex.1872), *quoted in* Fidell, *Judicial Recantation: Homage to Baron Bramwell*, 71 JUDICATURE 259, 259 (1988).[1] More accurately, the issue of retroactive versus prospective application was not argued to the court and not thoroughly considered in the opinion. The arguments of counsel on the motion for reconsideration have given us the opportunity to thoroughly consider the problem, and we are now persuaded that our former views require modification. We conclude, therefore, that the dissent was correct on this point. There was a "dramatic change" in the law and it would be "grossly unfair" to apply it retroactively. 157 Ariz. at 160, 755 P.2d at 1148 (Holohan, J., dissenting).

We come, then, to the difficult question of whether the benefits of the seat belt defense holding should apply to the Laws, who are defendants in this action. Ordinarily, even when a decision has solely prospective effect, "the fruits of the struggle are awarded the successful litigant." *Coons*, 96 N.J. at 434, 476 A.2d at 772.

However, each of the factors militating against general retroactive application militates just as strongly against retroactive application against the Harders. An equally pertinent consideration in this as in almost all seat belt cases is the fact that the "fault" of the victims had no relationship to the occurrence of the accident. Because the prophylactic effect of the new seat belt rule is precluded in this case, there is no equitable reason to reduce the Harders' damages without prior notice of the need to use a seat belt.

On balance, we believe that the best and most equitable rule is simply to make our original decision effective and applicable to all accidents occurring after the date on which the mandate in this case is filed.[2] *See Hawkins v. Allstate Insurance Co.*, 152 Ariz. 490, 505, 733 P.2d 1073, 1088 (choosing the date of mandate as appropriate point to impose new burden of proof for punitive damages), *cert. denied*, — U.S. —, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987).

Consistent with the views expressed in this supplemental opinion, we reinstate the trial court's protective order. The Harders' nonuse of seat belts is inadmissible at the trial of their action to prove the cause or aggravation of their injuries.

GORDON, C.J., and CAMERON, J., concur.

HOLOHAN, Justice, concurring.

I concur in the result.

MOELLER, J., did not participate in the determination of this matter.

---

1. We might also emulate Justice Story, who explained a reversal of position by stating that "[m]y own error, however, can furnish no ground for its being adopted by this Court." *United States v. Gooding*, 25 U.S. (12 Wheat.) 460, 478, 6 L.Ed. 693 (1827), quoted in Fidell, *supra*, at 259.

2. The mandate in this case was filed on July 7, 1988.